REBECCA B. CRAFT *vs.* SOUTH BOSTON RAILROAD COMPANY.

Suffolk.    January 22, 1889. — November 29, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Promissory Note — Street Railway Corporation — Authority of Treasurer.*

A stock-broker, who was the treasurer of a street railway corporation, wrote to a customer that she could lend the proceeds of bonds sold by him for her to the corporation, and she told him that she would so lend a part thereof to it, and left the amount in his hands, receiving from him therefor a note made in its name by him alone as treasurer. She was ignorant of and made no inquiries as to its by-laws, which provided that he could sign notes only as the directors

might require, which notes, to bind the corporation, were to be countersigned by the president, but acted in good faith, believing that he also acted honestly and had authority to make the loan and to give a note therefor binding upon the corporation. The treasurer, who had no such authority in terms, and was a defaulter, used the loan to cover up his defalcation by paying debts of the corporation. *Held,* that the customer could not recover against the corporation, either upon the note, or for money had and received.

CONTRACT on a promissory note for twenty-five hundred dollars, payable on demand to the order of the plaintiff, and signed "South Boston Railroad Co., by Wm. Reed, Treas." A count was added by amendment to the declaration for the recovery of the same amount, as money received by the defendant for the plaintiff's use. Trial in the Superior Court, without a jury, before *Sherman,* J., who found for the plaintiff, and reported the case for the determination of this court. The material facts appear in the opinion.

The case was argued at the bar in January, 1889, and afterwards was submitted on the briefs to all the judges, except *Holmes,* J.

*S. Lincoln,* for the plaintiff.

*J. G. Abbott,* (*C. T. Gallagher & J. S. Dean* with him,) for the defendant.

FIELD, J. William Reed was treasurer of the defendant, and also a broker. As broker he sold bonds for the plaintiff and sent to her his personal check for the proceeds, amounting to twenty-five hundred and seventy-five dollars, and at the same time wrote to her as follows: " If you wish to loan this on call, can lend it to South Boston Railroad Company at five per cent interest, and you can have it at any time at one day's notice." The plaintiff thereupon called upon Reed, and said that she would lend twenty-five hundred dollars to the defendant, and she gave back to him his check, and two days later received by mail from Reed the note in suit. Interest was paid on the note at three different times, for six months each, by Reed, by his individual check. " The plaintiff believed that everything was right and honest on the part of Reed, and that he had authority to make the loan and give the note in question as binding on the defendant. She was ignorant of any by-laws of the defendant and made no inquiries about them." The note is for twenty-five hundred dollars, on demand after date, payable to the order of the plaintiff,

and is signed, " South Boston Railroad Co., by Wm. Reed, Treas." It is not countersigned by the president of the company. The by-laws of the company provide that " the treasurer shall in the name of the company sign and indorse all promissory notes and drafts of the company as he may be required by the directors, and the same shall be countersigned by the president." The directors voted, on December 18, 1884, " that the president and treasurer, with the approval of the finance committee, be authorized to borrow a sum not exceeding forty thousand dollars for the uses of the company." No vote was ever passed authorizing the treasurer alone to borrow money for the company, or to sign a promissory note in behalf of the company. Reed never, in fact, with the knowledge of the directors, borrowed money for the company and gave its note therefor. Reed's testimony was, " that all loans before this one were made according to the provisions of the defendant's by-laws, and the notes were signed by the president and treasurer, except in a few instances, several years before this transaction, when he had borrowed money of a brother of a person who was then president of defendant, and also of the then president, but who had ceased to hold that office some years before the note in suit was given; but that those loans were not entered on defendant's books, and were not communicated to any of the defendant's officers except the then president." It is plain that Reed had not authority in fact to borrow this money for the company, and to give its promissory note.

Whatever may be true of trading corporations, there is nothing in the nature of the business of a horse railroad corporation, or of the duties of a treasurer of such a corporation, which implies that the treasurer by virtue of his office has authority to borrow money for the company, and to give its notes therefor. It does not appear that the company in any way held out Reed to the public, or to the plaintiff, as having any such authority, or that treasurers of horse railroad corporations customarily have or exercise any such authority. The action, therefore, cannot be maintained on the note.

The declaration also contains a count for money had and received, and the court, trying the case without a jury, " found upon the evidence of Reed, that the twenty-five hundred dollars

borrowed by him of the plaintiff were used by him for the payment of the debts of the defendant, and so came to its use," and therefore the court made a finding in favor of the plaintiff for the amount of the note and interest. Reed's testimony was, that he had embezzled large sums of money from the defendant, and that " he could not tell what debts of defendant he had paid out of the twenty-five hundred dollars received from the plaintiff, and that he had used it to cover up and conceal his shortage to the defendant, but that he used it to pay the debts of the defendant."

Whether a person under any circumstances can be made a debtor for money borrowed by another for him, without authority, and appropriated to his use without his knowledge or consent, need not be considered. See *Kelley* v. *Lindsey*, 7 Gray, 287. No obligation on the part of the defendant ought to be implied in this case, because Reed was a defaulter, and the money was used to cover up his defalcation by paying debts of the company, which the money of the company, if he had not embezzled it, would have been used to pay. The only reasonable inference is that Reed's primary purpose in using the money in this way was to escape detection and to benefit himself. Whether it was a benefit to the company that he was able to obtain and use money for this purpose is necessarily uncertain. The money was not borrowed *bona fide* for the use of the company. See *Railroad National Bank* v. *Lowell*, 109 Mass. 214 ; *Agawam National Bank* v. *South Hadley*, 128 Mass. 503.

By the terms of the report, there must be judgment for the defendant.

*So ordered.*