## PARSONS v. JOHNSON et al.

(Supreme Court, Appellate Division, Fourth Department. March 26, 1898.)

1. CORPORATIONS—ANNUAL REPORT—FALSITY—DAMAGES.

Stock Corporation Law, § 30, requires every stock corporation to make an annual report, to be signed by a majority of its directors, and verified by the oath of its president, etc., stating the amount of its capital stock, debts, and assets. Section 31 provides that, if such report shall be false in any material representation, the officers and directors signing same shall be personally liable to any person who has become a creditor or a stockholder, on the faith of such report, to the amount of the debt contracted or damage resulting from the purchase. By the falsity of a report, a party was induced to exchange land, which was given a certain value by the directors of the corporation and himself in the exchange, for an equal amount of the stock of the corporation, which was worthless. Held, that the directors making such false report were liable for the value of the land, as fixed by the contract, and evidence offered by them to show that the land was worthless was incompetent.

2. APPEAL—HARMLESS ERROR—EVIDENCE.

In an action for damages resulting to plaintiff by exchanging his land for worthless stock of a corporation, which he claimed he was induced to make

by the issuance of a false report of its directors, proof by both parties was offered and admitted, on the question of plaintiff's good faith, as to the value of the land. In rebuttal, plaintiff was allowed to testify as to an offer made to him for the land a few years previous to the date of the transaction. *Held*, that the admission of such testimony was harmless.

## Appeal from trial term, Erie county.

The action was commenced in Erie county, in March, 1896, to recover of the appellants and Henry J. Wilkes, a majority of the directors of the Buffalo Brass & Iron Bedstead Company, a stock corporation organized and existing pursuant to the stock corporation law, damages resulting to the plaintiff, who had purchased stock in the said corporation upon the faith of an annual report made by them of the property of the corporation, pursuant to sections 30 and 31 of the said stock corporation law, which contained false and material representations as to the financial condition of the corporation. This report was made in January, 1895, and filed as required by the statute, and set forth that the capital stock of the corporation was $100,000, which had been actually issued; that the amount of its debts did not exceed the sum of $66,511.67; that the amount of assets was at least equal to the sum of $170,935.77. The plaintiff was the owner of 12.6 acres of an island in the Niagara river, called "Connor's Island," in conjunction with a relative, Martha J. Parsons. The appellants were stockholders in the corporation, and, after some negotiation through an agent of Johnson's with the plaintiff, Johnson, on the 30th of September, 1895, entered into a written agreement with the plaintiff, whereby it was agreed that the 12.6 acres on Connor's Island, upon which a valuation of $25,200 was fixed, subject to a mortgage of $5,000, should be exchanged for 202 shares of the capital stock of the Buffalo Brass & Iron Bedstead Company, being stock held and owned by Johnson, and the par value of which was $20,200, each party agreeing to deliver to the other the property to be transferred. Pursuant to this agreement, the plaintiff, his wife, and Martha J. Parsons conveyed the premises at the request of the defendant Johnson to his brother, Walter J. Johnson, and the defendant Johnson transferred the 202 shares of the capital stock mentioned to the plaintiff, and the plaintiff ultimately surrendered the certificates held by Johnson, and received others issued to him by the corporation. The deed to the land upon the island was taken in the name of Johnson's brother for the benefit of the defendants Johnson, Conroy, and Wilkes, and they were thus interested in the purchase of the land by Johnson. There was evidence given upon the trial before the jury strongly tending to prove that, before purchasing the stock, plaintiff examined the annual report above mentioned, to ascertain the value of the stock of the corporation, and, relying upon such report, that he purchased the stock. The evidence also made it quite apparent that at the time of the making of the annual report, and at the time of the purchase of the stock by the plaintiff, the stock was worthless, and the corporation was insolvent.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

August Becker, for appellants.
Charles B. Wheeler, for respondent.

WARD, J. Upon the trial, evidence was given by both sides as to the value of the land upon the island conveyed to the defendant Johnson, but it was only received by the trial court upon the question of the plaintiff's good faith in purchasing the stock. The court, in its charge, said:

"Now, the measure of damages in this case, if you believe that Parsons relied upon the contents of this annual report of 1895, and that it was false in any material representations, the measure of damages for your guidance in this case, in determining the amount of your verdict, is the difference between the value of that stock as it would have been had that annual report been true and as it actually was with the annual report false, if you shall find it false. And the court has permitted evidence here as to the value of this island merely as

a circumstance in the case bearing on the question as to whether Parsons, in making this exchange of properties, did actually rely on this annual report and its contents; the claim being made here by the defendants that the island was worthless, that it had no actual value, and that Parsons knew it, and that Parsons did not exchange anything for this stock, and that, therefore, Parsons did not believe he was getting $20,200 worth of stock at this time."

There was an exception to this charge by the defendants, and there was also an exception taken upon the trial to limiting the effect of this evidence, as has been stated; the contention of the defendants upon the trial and upon this review being that the true measure of damages which should be recovered by the plaintiff, if any, was the actual value of the land conveyed in exchange for the stock, and that the rule of damages as given to the jury by the trial court was erroneous; and the appellants' counsel insists that the statute imposing the liability for a false report by the defendants of the condition of the corporation is penal in its character, and that all that can be recovered is the actual loss, if any, sustained by the plaintiff. This leads to a consideration of the statute referred to.

Section 30 of the stock corporation law provides that:

"Every stock corporation * * * shall annually, during the month of January, * * * make a report as of the first day of January, which shall state: (1) The amount of its capital stock and the proportion actually issued; (2) the amount of its debts or an amount which they do not then exceed; (3) the amount of its assets or an amount which its assets at least equal. Such report shall be signed by a majority of its directors, and verified by the oath of the president or vice president and secretary or treasurer, and filed in the office of the secretary of state, and in the office of the county clerk of the county where its principal business office may be located."

Section 31 of this law provides:

"If any certificate or report made or public notice given by the officers or directors of a stock corporation shall be false in any material representation, the officers and directors signing the same shall jointly and severally be personally liable to any person who has become a creditor or a stockholder of the corporation upon the faith of any such certificate, report, notice or any material representation therein to the amount of the debt contracted upon the faith thereof if not paid when due, or of the damage sustained by any purchaser of or subscriber to its stock upon the faith thereof. The liability imposed by this section shall exist in all cases where the contents of any such certificate, report or notice or of any material representations therein shall have been communicated either directly or indirectly to the person so becoming a creditor or stockholder, and he became such creditor or stockholder upon the faith thereof."

It is entirely clear from this statute that an officer of a corporation making a false statement in the annual report becomes liable to the damages which naturally flow from or are caused by the falsehood. The legislature has not undertaken to define the precise damage which the injured party may recover, but has used a broad term, which covers all damages which flow directly from the false statement. The action upon this statute is one in tort, partaking largely of the character of an action for damages for fraudulent representations knowingly made upon the sale of property. At common law and independent of any statute, an action for damages based on fraud could be maintained, and it was not necessary that the representations should be made to the plaintiff directly. It was sufficient, if they were made to a third person, to be communicated to the plaintiff, or if made to the public generally, with a view of their being acted upon. Swift v.

Winterbotham, L. R. 8 Q. B. 253; Morse v. Swits, 19 How. Prac. 275; Eaton Co. v. Avery, 83 N. Y. 31; Bruff v. Mali, 36 N. Y. 200.   In such a case, and in an action upon a warranty, the measure of damages in the sale of personal property is determined by the difference in value between the article sold and what it should be according to the warranty or representation.   Sedg. Meas. Dam. (8th Ed.) § 777; Whitney v. Allaire, 1 N. Y. 305–312; Krumm v. Beach, 96 N. Y. 398; Vail v. Reynolds, 118 N. Y. 297, 23 N. E. 301.   The statute cited does not in terms require that the annual report should be false to the knowledge of the officer making it, but goes further than the common law in creating responsibility, and makes the officer liable if the report be false in material respects.   This indicates the solicitude with which the legislature sought to protect persons dealing in the stock of the corporation, holding the officer to a strict account for his statement, if false, whether knowingly made or otherwise.

We perceive no reason why the rule of damages applicable in cases of fraud and breach of warranty should not apply here.   The parties, by their contract, have fixed the value of the land exchanged for the stock at an amount nearly equal to the par value of the stock.   All of the defendants were parties to that contract, or received the benefit of it.   It is not alleged in the defendants' answer, nor claimed here, that there was any fraud or misrepresentation on the part of the plaintiff or mistake concerning the value of this real estate at the time of the exchange; and, in the absence of any of those elements, it was not competent for the defendants to attempt to disprove the value which they themselves had fixed upon the real estate as a basis for the contract.   Upon the execution of the contract, therefore, the basis of damages was fixed.   There was sufficient consideration for the sale of the stock, and, in the absence of fraud or mistake, it was immaterial whether that consideration was equal to the par value of the stock or not.   To test the consistency of the defendants' position that the judgment for damages against the defendants should be measured by the real value of the land, independent of the contract of the parties, we will assume that its real value, instead of being $20,000 or less, was $40,000 or any amount exceeding the value fixed by the contract.   Would it be contended that the defendants would be liable for such excess?   We apprehend not.

The learned counsel for the appellants, in his exhaustive brief, has argued numerous exceptions aside from that which we have considered as to the damges.   A careful examination of the case discloses that they are without merit, and that reversible error does not appear in the rulings upon the trial.   That the stock, when sold to the plaintiff, was worthless, or nearly so, and that the corporation was insolvent, and had gone into the hands of a receiver for the distribution of its assets, can hardly be questioned; and the only real question in the case is what rule of damages should have been adopted at the trial, and that question we have considered.

We will, however, refer to an exception taken to the admission of the evidence of the plaintiff upon rebuttal, when he was asked if he had had an offer for this land upon the island.   The defendants' counsel objected to that as incompetent.   The court held that the only

materiality to the evidence was its bearing upon the question as to what the plaintiff believed the island was worth, and the court held that in that view it was competent. The evidence was received, and the plaintiff testified that, some years before, he had received an offer of $27,000 for the property. This evidence was received after the court had permitted evidence to be given by both parties as to the value of the land upon the subject of the good faith of the plaintiff. It was, perhaps, competent in the view with which it was received; but, whether so or not, it does not constitute reversible error in this case.

The views we have expressed lead to the result that the judgment and order appealed from should be affirmed, with costs. All concur.