Argued March 19, affirmed April 6, rehearing denied May 25, 1915.

# BANK OF GRESHAM *v.* WALCH.

### (147 Pac. 534.)

**Bills and Notes—Failure of Consideration—Statute.**

1. In an action by a bank on a note, of which it was the original payee, given for the purchase price of stock, where the sale had been effected by agents acting for the bank and for the corporation whose stock was sold, they having represented that the corporation was a rich concern and backed by the bank, and that it had a large amount of goods in warehouse when it had, in fact, no property, money, or credit, a good defense was presented to the bank's suit; it not being a holder in due course, under Section 5885, L. O. L., defining who is a holder in due course, and absence or failure of consideration being a matter of defense against any person not a holder in due course by direct provision of Section 5861.

**Bills and Notes—Want of Consideration—Burden of Proof.**

2. By the negotiable instruments law the burden of showing want of consideration rests upon the defendant sued on a note, and, if he offers any evidence on the head, the plaintiff must show consideration by a fair preponderance of the evidence.

**Principal and Agent—Ratification—Acceptance of Benefits—Estoppel to Deny Authority.**

3. In an action on a note for the purchase price of stock, where the plaintiff received such note, and thereby accepted the benefits of the transaction from its agents, who had secured it from the defendant, it became chargeable with the fraud of such agents in procuring the note.

**Evidence—Action by Bank—Letter of Cashier.**

4. In a suit by a bank on a note, a letter written by its cashier on its stationery and signed by him in his official capacity was admissible in evidence, on the issue of fraud set up by the defense, as being the letter of the bank.

**Trial—Conduct of Judge—Remarks in Ruling.**

5. In an action by a bank on a note given for stock, the defense was the false representations of the agents of the bank and the corporation whose stock was sold as to the resources of the company, and, in ruling on the admissibility of a letter of the cashier of the bank, the court stated: "It will be a question for the jury to determine whether these parties were acting in conspiracy to work out this fraud." *Held,* that the reference to "this fraud" was not objectionable as a reference to fraud by plaintiff; there being no question but what there was fraud on the part of the corporation.

From Multnomah: Henry E. McGinn, Judge.

Department 1.   Statement by MR. JUSTICE BEAN.

This is an action brought by the Bank of Gresham against L. Walch to recover the sum of $750, balance due upon the principal of a promissory note dated July 13, 1912, for $1,000, with interest and attorney's fees.   To this complaint defendant interposed the defense of fraud, and, as a basis thereof, alleges the existence of a conspiracy between the plaintiff and the Co-operative Supply House.   The details of the transaction are set forth in the answer, in substance, as follows:

That on or about June 22, 1912, the plaintiff corporation, represented by John G. Sleret, its president, F. A. Holliday, its vice-president, and O. A. Eastman, its cashier, and the Co-operative Supply House, a corporation, by George J. Hodder, its president, and P. J. Darche, its secretary, and both corporations and their respective officers represented by Englert & Hardley, who were selling agents of the Co-operative Supply House, agreed and confederated and acted together for the purpose of cheating and defrauding the defendant.

That before the defendant purchased some of the capital stock of the Co-operative Supply House the officers and agents of the two corporations named above caused to be prepared and written to show and read to the public for the purpose of inducing people in general to invest in the capital stock of the Co-operative Supply House a large number of letters signed by the officers of the plaintiff and other influential business men residing near Gresham, said letters to be delivered by the officers of the respective corporations to Englert & Hardley, their agents employed to solicit subscriptions to the capital stock of the Supply House

76 Or.—18

to be used in selling such stock; that Englert & Hardley were authorized and directed by the plaintiff corporation and the Co-operative Supply House, and the officers thereof, to exhibit and read said letters to the defendant, to the end that the latter might believe the statements therein contained, and thereby be induced to purchase and pay for some of said corporate stock.

That the following is a copy of one of the letters written by one O. A. Eastman, cashier of the plaintiff corporation:

"Bank of Gresham, Gresham, Oregon.
"John G. Sleret, Pres.
"F. A. Holliday, Vice-pres.
"O. A. Eastman, Cashier.
"Emil G. Kardell, Asst. Cashier.

"June 22, 1912.

"Co-operative Supply House, Portland, Oregon:
"Gentlemen: In reply to your request as to my opinion of the future possibilities of the Co-operative Supply House, would say I cannot see any reason why it should not prove a success and profitable investment owing to to fact that there is no concern of any prominence on the coast doing a mail order business.

"Previous to my coming West my attention was called to the remarkable success of the firm of Sears, Roebuck & Co., and I cannot see why under your plan of distributing stock among the people with a view of obtaining them as customers will not prove most profitable both to your company and the stockholders. As in evidence of my belief I have this day signed a subscription for a substantial block of stock through your representative Messrs. Englert & Hardley and predict a successful future for the company, as the business will be in the hands of capable men.

"Yours truly,

"O. A. EASTMAN, Cashier."

That Englert & Hardley, agents of such corporations, and acting under their authority and direction, and with their full knowledge and assent, and for the purpose of inducing the defendant to purchase capital stock of the Supply House with the intent that he would rely upon and believe to be true the statements and representations contained in said letters, did on July 13th call at the home of defendant, and found him ill and suffering from kidney trouble and partial blindness, and, while in such condition, the said Englert & Hardley read to and showed defendant the original of the letter above mentioned, and a large lot of other letters of similar import and effect, and stated to defendant the following representations:

"(1) The Co-operative Supply House is a corporation organized with a capital stock of $3,000,000.

"(2) This is a rich concern, and it is backed by the Bank of Gresham, Oregon, which owns a large block of stock.

"(3) This stock is now worth $10 per share, and it will go to $15 per share next month, and this is the time for you to buy.

"(4) This company now has thousands of dollars worth of goods in its big warehouse in Portland, ready for distribution to the farmers, and if you become a stockholder now you will be entitled to buy goods from this company at extremely low rates.

"(5) In addition to getting goods at low rates you will also receive large yearly dividends on your stock.

"(6) If you want to buy this stock, and have no money to pay for it now, the Bank of Gresham will take your note and issue you the stock."

That defendant relied upon all the foregoing statements and representations, and, believing them to be true, was induced to, and did, purchase capital stock of such corporation of the par value of $1,000 for the

price of $1,000, and in payment therefor gave to plaintiff his negotiable promissory note for the sum of $1,000, although defendant thought at the time that he was purchasing only $100 worth of said stock for the price of $100; that the stock was the only consideration received by the defendant.

That all the aforesaid statements and representations were false and untrue, and known by the corporations and their officers and agents to be false when the same were made, or were made recklessly and wantonly and without knowledge that the same were true; that said stock was worthless, and that the Co-operative Supply House had no property, money or credit whatever.

That as soon as the defendant was notified of the note held by the bank, which was the first that he knew of the note being for $1,000, he informed plaintiff of the fraud practiced upon him; that O. A. Eastman, cashier, informed defendant that his $1,000 note would be surrendered to him as soon as the matter could be · arranged with the Co-operative Supply House, or that, if he made arrangements to purchase a smaller block of stock, the difference between the value of the stock he then had and his new purchase would be indorsed upon the $1,000 note; that defendant believed and relied upon the statements of said plaintiff made by its cashier, and thereafter, on January 22, 1913, plaintiff and the Co-operative Supply House through its officers, in furtherance of their scheme and design to defraud this defendant, again issued to him two blocks of stock in the Co-operative Supply House, one for 25 shares, delivered to defendant, and one for 75, delivered to plaintiff; that in November, 1912, O. A. Eastman induced defendant to pay $250 on the note mentioned in plaintiff's complaint; and that defendant

paid the same with the understanding that he would be released from any further payments on the $1,000 note.   By a further and separate answer defendant alleges that he has been damaged in the sum of $250. To this answer plaintiff replied that defendant at a date prior to July 13th had subscribed for stock in the Co-operative Supply House, and had given his note for $1,000 payable at another bank, but that by agreement with defendant, and at a subsequent date, he gave a second note for $1,000 to plaintiff, upon which plaintiff advanced the money necessary to take up and pay off the note given by the defendant to the Co-operative Supply House.   The cause was tried to the court and jury, and a verdict rendered in favor of defendant for $250.   From a resulting judgment the plaintiff appeals.   In his evidence the defendant tells his story, in substance, the same as in his answer.

AFFIRMED.   REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Stapleton & Sleight,* with an oral argument by *Mr. George W. Stapleton.*

For respondent there was a brief over the names of *Mr. Walter G. Hayes* and *Messrs. Huntington & Wilson,* with an oral argument by *Mr. Hayes.*

MR. JUSTICE BEAN delivered the opinion of the court.

1, 2. Counsel for plaintiff objected and excepted to the introduction of any evidence in support of the allegations of defendant's answer, for the reason that the same did not state facts sufficient to constitute a defense of fraud.   With this contention we are unable to agree.   The knowingly false and written representations made to defendant for the purpose of induc-

ing him to purchase the worthless stock and execute the note upon which defendant relied as set forth in the answer were sufficient to permeate the whole transaction and vitiate the same. It was stated to defendant in writing that the Co-operative Supply House was a rich concern backed by the Bank of Gresham, the first of which was clearly false, and the latter denied by plaintiff. It was represented that the company had thousands of dollars worth of goods in its warehouse in Portland, when, in truth, it had no property, money or credit. That the representations were made by Englert & Hardley, as agents for the Supply House and plaintiff, with intent to defraud defendant, is plainly alleged: *Anderson* v. *Adams,* 43 Or. 621, 627 (74 Pac. 215); *McFarland* v. *Carlsbad Hot Springs S. Co.,* 68 Or. 530 (Ann. Cas. 1915C, 555, 137 Pac. 210); *Nevada Bank of San Francisco* v. *Portland National Bank* (C. C.), 59 Fed. 338.

In order to determine the effect of the fraudulent transaction upon the note given by defendant to the plaintiff bank, it is necessary to consider our negotiable instruments law. Under the express terms of the statute every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration; but, under that rule and further provisions, such an instrument is open to the defense of want of consideration or fraud as against all persons except a holder in due course: 1 Daniel, Neg. Inst. (6 ed.), § 163. Section 5885, L. O. L., declares:

"A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith

and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.''

The plaintiff bank is the original payee named in the note sued on. It has never been indorsed or transferred. Plaintiff is not a holder thereof in due course within the meaning of the statute. The note is subject to the defense stated in the answer. Under the statute the burden of showing that there was a want of consideration rests upon the defendant, and, if he offers any evidence that shows or tends to show a want of consideration, then it is incumbent upon the plaintiff to prove by a fair preponderance of the evidence upon the whole case that there was a consideration: *Bringman* v. *Von Glahn*, 71 App. Div. 537 (75 N. Y. Supp. 845). · Absence or failure of consideration is a matter of defense as against any person not a holder in due course, as ordained by Section 5861, L. O. L. The evidence tended to support the allegations of the answer, and to show, and the jury by its verdict found, that the note was obtained from defendant by means of false and fraudulent representations made by Englert & Hardley, and for no consideration except the worthless certificates of stock in the Co-operative Supply House.

3. When the Bank of Gresham received the note from Englert & Hardley, and thereby accepted the benefit of the transaction, it was incumbent upon the bank to pay to defendant the consideration for the note which it received or to satisfy itself that he had been paid, and that the note was valid. If plaintiff was content to trust to Englert & Hardley to transact the business for it, this would not relieve the payee in the note from being subject to the defense available to the maker in an action between the original parties to the

note. The fact that a prior note was executed payable to or at another bank where defendant usually did business, and was destroyed, does not strengthen plaintiff's claim; but this circumstance was one that should have tended to put plaintiff upon its guard, if notice had been necessary.

4, 5. Our conclusion as to the status of the parties to the note under the statute renders the other question raised and ably briefed by the learned counsel for plaintiff of less importance. By the charge of the trial court the case was submitted to the jury upon the theory that, in order for the fraud to constitute a defense to the note, the plaintiff must be proven to have been connected therewith, or had knowledge or means of knowledge thereof in addition to the taking of the note from the defendant. This theory of the case was favorable to the plaintiff, and it has no reason to complain of the instructions in this regard. The court charged the jury, in effect, that the letter set out in the answer was the letter of the bank. Under the authority of *Nevada Bank of San Francisco* v. *Portland Nat. Bank* (C. C.), 59 Fed. 338, there was no error in so ruling: Morse, Banking, § 162. The writing of the letter by Mr. Eastman, the plaintiff's cashier, was not disputed. In ruling upon the objection to introduction of letter, defendant's "Exhibit A" the court said:

"It will be a question for the jury to determine whether these parties understood each other and were acting in conspiracy and concert for the purpose of working out this fraud. If the jury shall find that there was an understanding between Mr. Eastman and this other man by which this work was being done, then the declaration made by this man is introducible against the bank as the cashier is the manager of the bank, and not a subordinate."

As we understand the records, there was no room for question but that there was fraud on the part of the Co-operative Supply House and its agents, and therefore the remark of the court was not objectionable. The court did not refer to the fraud as being that of plaintiff, and its rights were not prejudiced thereby.

Finding no error in the record, the judgment of the lower court is affirmed.

AFFIRMED. REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE McBRIDE and MR. JUSTICE BENSON concur.