[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 85 
This suit was instituted to cancel 100 shares of stock issued to the plaintiff while the defendant bank was insolvent; to enjoin the defendant, Frank C. Bramwell, Superintendent of Banks of the State of Oregon from collecting an assessment on said stock; to relieve the plaintiff from the obligation of a promissory note for $4,000 given by the plaintiff in part payment of said stock, and for judgment against the defendants, Leroy D. Walker and Anthon Eckern, for the sum of $11,000, the amount paid by the plaintiff in cash for said stock. The total price agreed to be paid by plaintiff for said stock was $15,000. The complaint is too long to set out in full. After alleging the capacity of the several parties to the suit, the amended complaint sets out that the People's Bank, a banking institution in Portland with an authorized capitalization of $100,000, contemplated increasing its stock to $200,000 and plaintiff had agreed to subscribe to 100 shares of the increased capital; that on the twenty-sixth day of September, 1921, the stockholders resolved to consolidate that bank with the State Bank of Portland, one of the defendants. The defendant bank about the same time adopted a resolution to increase its capital stock from $200,000 to $300,000, and to consolidate with the said People's Bank; that the plaintiff then agreed that his subscription for the 100 shares of the capital stock of the People's Bank should become a subscription to the capital stock of the defendant State Bank and alleges the payment made by the plaintiff and the issuance to him of 80 shares of said stock; that *Page 86 
the other 20 shares had never been issued to him; that the defendants, Walker and Eckern, were directors and president and vice-president respectively of the defendant bank; that they were the executive officers and active managers of said bank; that they had actual knowledge of the condition of said bank, had control and direction of its fiscal affairs, control of and directed the making of loans and discounts of said bank; that they as officers and directors caused to be prepared, published and circulated false statements regarding the financial condition of said bank, setting out specifically two of the alleged false statements showing the defendant bank to be in a prosperous condition and disclosed the book value of the shares of stock to exceed $200 a share; that said alleged false reports were made in obedience to calls for statements of the assets and liabilities of said bank duly made by defendant Bramwell as superintendent of state banks; that the defendants, Walker and Eckern, attested said statements and the same were published in a newspaper in the City of Portland; that one of said reports so made and published purported to reveal the condition of the defendant State Bank June 30, 1921, and another one September 6, 1921; that the plaintiff saw and read said reports upon their publication, believed them, relied thereon and was thereby influenced to contract and pay for 100 shares of the capital stock of the said State Bank, paying therefor the sum of $150 per share; "that said defendants, confederated together and conspired to sell and dispose of their stock holdings in said State Bank of Portland, to plaintiff and the public, and in furtherance of said conspiracy, said defendants represented to the said plaintiff that the said State Bank of Portland was solvent, was in *Page 87 
a prosperous condition, that the stock thereof was earning dividends of 10 per cent per annum, on the par value thereof, and that the value of said stock was in excess of $200 per share." The complaint further recites in detail the alleged false items in said statements so published and that said representations were "knowingly and willfully made for the purpose and with the intent of causing and inducing plaintiff to purchase their shares of the capital stock of said bank, under the belief that he was acquiring stock in the increased capitalization, and with the purpose and intent that the plaintiff would rely on said representations, and for the purpose and with the intent that they, the said defendants, would dispose of and sell their individual stock before the true condition of said bank would become known, and with the intent of escaping liability on said stock." It is then alleged that the defendants, Walker and Eckern, "well knew, the said representations so made by them, were false and untrue; that the said State Bank of Portland was in a failing condition, unsound and insolvent on the thirtieth day of June, 1921, and on September 6, 1921, and at the times said representations were made by said defendants, and caused to be published by them, and at the time of the transfer of said stock to plaintiff; that the loans and discounts, published in said reports of the condition of the said stock, hereinbefore set out, were not good collectible assets. That of said loans and discounts, approximately $500,000, were of no value as is hereinafter more fully set forth, and were of such nature that they were and are uncollectible." The complaint then sets out in detail the items alleged to be worthless and alleges that the defendants, Walker and Eckern, while president *Page 88 
and vice-president respectively of the defendant State Bank and while directors thereof "loaned the funds of said bank in an excessive manner, and in a manner incurring great risk and loss to said bank, sufficient in amount to impair the entire capital stock thereof, and to cause the said bank to become insolvent, * * and while said defendants were respectively president and vice-president, heavy losses resulted from such unsafe and imprudent loans, the capital stock became impaired and wasted, the surplus and undivided profits disappeared, and the assets dwindled until on said thirtieth day of June, 1921, the cash market value of the assets and resources of said bank were greatly less than the liabilities, and the said assets were at said time insufficient to pay the deposit liabilities thereof, and said bank was rendered insolvent. That all of the said acts which caused the impairment of the capital stock of said bank, and the insolvency thereof, were done, and the losses causing such insolvency were occasioned and incurred long prior to the transfer to plaintiff of the eighty shares of stock hereinbefore mentioned; * *." The list of worthless loans made by the defendants, Walker and Eckern, while president and vice-president respectively and active managers of said defendant bank, is a long one and includes one item of $232,000 in bonds of the Stock Assets Company which item appeared in the statement of resources in the said report of June 30, 1921, September 6, 1921, and in December 31, 1921, and that during all said times said bonds were worthless and without any cash market value; "that the fact that said bonds were without any cash market value, was fully known to said defendants, and not known to plaintiff." *Page 89 
"That said defendants conspired to dispose of their stock in said bank before the suspension, which they knew to be inevitable should come, and to escape liability on said stock, and caused eighty shares of their stock to be transferred to plaintiff, with the deliberate intent of fixing the liability therefor on plaintiff.
"That notwithstanding the exhaustion and loss of the capital stock of said bank, said defendants conspired to sell and dispose of their stock at an enhanced and increased price to plaintiff, and to further the said conspiracy and confederation, made the representations hereinbefore set out, for the purpose and with the deliberate and premeditated intent to influence and induce plaintiff, and the public, to purchase said stock, and to pay an exorbitant price therefor."
Then follows an allegation to the effect that the said defendants, Walker and Eckern, sold and transferred to the defendant Olson 1,000 shares of the capital stock of said State Bank of Portland for $132.50 per share; that said defendants, said Walker and Eckern, were the actual owners of said 1,000 shares but that the same were listed on the books of said bank as belonging to the Bond and Securities Company; that said Bonds and Securities Company was a corporate device created by the said defendants for the express purpose of holding said shares of stock in said bank, in order that said defendants would escape liability on the said stock in said bank in the event of the said insolvency of said bank; that the said defendants, Walker and Eckern, were owners of the capital stock of said Bond and Securities Company. It is further alleged that the said 1,000 shares listed in the name of said Bond and Securities Company were the identical shares contracted to be sold by the defendants, Walker and *Page 90 
Eckern, to the defendant Olson and that 752 shares thereof were transferred to the defendant Olson and listed on the books of said bank in his name; that when the consolidation of the People's Bank with the defendant State Bank was consummated and while the defendants, Walker and Eckern, were president and vice-president of the said State Bank and said Olson had become a director thereof, the payments made by the plaintiff for the stock purchased by him, was without his knowledge or consent, paid to and taken by the said defendants, Walker and Eckern, and credited on the contract of said Olson for the purchase of said 1,000 shares; that the note given by the plaintiff for the sum of $4,000 in part payment of the shares purchased by him was transferred or delivered to the defendant Olson; that at the time said note was signed and delivered by the plaintiff the name of the payee was not written in said note and thereafter when said note was delivered to the said Olson his name was written therein as payee without the knowledge or consent of the plaintiff; that said note was thereafter delivered to the Columbia Trust and Savings Bank and that plaintiff has not sufficient knowledge to form a belief whether or not the defendant Columbia Trust and Savings Bank is a holder for value or the owner thereof and alleges said note was entirely without consideration; that the defendants Walker, Eckern and Olson, "in equity and good conscience, should be substituted in the place of and stead of plaintiff on said promissory note."
"That on the 16th day of February, 1922, the said State Bank of Portland suspended payment, and the said defendant, Frank C. Bramwell, as Superintendent of Banks, took charge and possession of the said bank, and of the assets thereof; that said bank *Page 91 
is now in liquidation; that the assets will not suffice to pay the deposits; that said Bramwell since the commencement of this suit, and on the 21st day of April, 1922, found the assets of said State Bank of Portland to be insufficient to pay the deposit liabilities, and that such deficiency is the sum of $639,588.31, and thereafter levied an assessment on all the capital stock of said bank to the amount of the par value thereof, and is now instituting actions and suits in the courts to enforce such assessment, and threatens to institute an action against plaintiff for $8,000, the par value of the said 80 shares of said stock so transferred to plaintiff, as hereinbefore set forth."
The complaint further alleges, that on the thirtieth day of June, 1921, and at all times subsequent thereto, the defendant State Bank was insolvent and the actual cash value of assets was insufficient to pay the liabilities of said bank, which said facts were known to said defendants, Walker and Eckern; that at the time plaintiff purchased said shares of stock and the 80 shares were transferred to the plaintiff, the defendant State Bank was insolvent; that the deposits fell off in volume, and decreased in amount; that no rights of creditors accrued after said stock was credited to plaintiff and that no depositor or other creditor of said defendant State Bank made deposits in said bank, or extended credit to said bank in any way, on the strength of plaintiff's name being on the list of stockholders, or with knowledge that plaintiff's name appeared on the list of stockholders of said bank, and further that plaintiff's name was not entered in the stockholders' register until after the bank suspended on February 16, 1922. It is further alleged that plaintiff had no knowledge, notice or information of the insolvent condition of the defendant State Bank, or of the alleged fraud, when he *Page 92 
made the agreement to take said stock; that he did not know and could not by the exercise of ordinary care, or even the highest degree of care, ascertain the untruth of said representation, or the true condition of said bank, or that its capital stock was worthless at the time he made the agreement, or when he paid said sums of money to said bank, or when he received the certificates for said 80 shares of stock; nor could those facts by any degree of diligence or effort have been known or discovered by him at any time thereafter, before said bank suspended payment and was taken in charge by the said Superintendent of Banks on February 16, 1922; that after said bank suspended, plaintiff diligently sought to ascertain the actual condition of said bank, and pressed inquiries upon the officials of the Superintendent of Banks, in charge of said bank, who averred their inability to then determine the true condition of the bank's affairs; that plaintiff also made inquiry of the bank, who assured plaintiff that the suspension was only temporary, and that the closing was only due to the temporary condition of the cash reserve, and when the cash reserve was brought up to the statutory amount, the bank would reopen, and further that the assets were sound and ample to protect all liabilities; that the Superintendent of Banks, with all the means at his command, was unable to and did not estimate and fix the amount of the deficiency of assets until the nineteenth day of April, 1922; that this suit was commenced immediately after the plaintiff was able to ascertain the fraud and the insolvent condition of said bank. That the plaintiff before this suit was instituted caused the said 80 shares of stock to be tendered to defendants and keeps them tendered by *Page 93 
bringing the shares of stock into court for the defendants.
"That plaintiff has never participated in any meeting of the stockholders of said bank; that he has never been an officer thereof, and has never received any benefit of any character whatsoever from said bank, by reason of his ownership or possession of said stock thereof.
"Plaintiff further avers, that he was induced to purchase 100 shares of stock in said State Bank of Portland, at the time of the consolidation of said Peoples Bank with said State Bank of Portland. That said consolidation was to and did become effective on October first, 1921; that plaintiff believed and relied on the published statements of the condition of said State Bank of Portland, which had theretofore been caused to be issued and published by the defendants, Walker, Eckern and Olson; that the said Peoples Bank at the time of its consolidation with said State Bank, transferred its assets and liabilities to said State Bank; that the increased capital stock of said State Bank of $100,000, was not paid in cash, but the said stock was issued to the stockholders of the Peoples Bank, and paid by the transfer of the assets of said Peoples Bank to the consolidated State Bank; that the assets of said Peoples Bank were insufficient to make said State Bank solvent, and at the time of the merger, and at the time said 80 shares were issued and delivered to plaintiff, said State Bank of Portland was insolvent and remained insolvent until the said bank was taken in charge by the Superintendent of Banks on February 16, 1922. That the defendants, Leroy D. Walker and Anthon Eckern, were directors of said State Bank of Portland, after the consolidation, and knew the condition thereof, and at the time said 80 shares were transferred to plaintiff, * * said defendants caused the said stock to be transferred to plaintiff, knowing his belief that said stock was worth in excess of $150 per share, and knowing that such belief had been *Page 94 
caused by the statements and representations which they the said defendants had made, and caused to be made."
The plaintiff prays that the agreement for the purchase of said stock from the said Walker and Eckern, or either of them, whether made directly, or through defendant Olson, or otherwise, be canceled; that the said defendants be decreed to be the owners of the said 80 shares; that said defendants, or either thereof, as may appear, be decreed to be the owners of said 20 shares of stock contracted for and covered by the said promissory note, now in the Columbia Trust and Savings Bank, certificates of which have not been executed or delivered to plaintiff. That the defendants, Walker and Eckern, be required and decreed to assume all liability on said promissory note and substituted for the plaintiff as makers of said note in the place of said plaintiff.
"And if in any event any liability should be adjudged against plaintiff at law on said note that plaintiff have recourse against said defendants, in such amount as may be adjudged against him; That the said Columbia Trust and Savings Bank be enjoined and restrained from proceeding in any way against plaintiff to recover on said note. And further, that said Frank C. Bramwell, as Superintendent of Banks, be enjoined and restrained from assessing any liability against plaintiff on said stock, or any part or share thereof, and that he be restrained and enjoined from instituting any action, suit or proceedings against plaintiff, on any such assessment; That he be commanded, mandatorily enjoined and decreed to direct all assessments, suits, actions and proceedings in any way touching said stock, or relating thereto, against said Leroy D. Walker and Anthon Eckern; And further, that plaintiff have a *Page 95 
decree against and have and recover from said defendants, Leroy D. Walker and Anthon Eckern, the sum of $11,000, paid by plaintiff and received by said defendants, as payment on said stock; That he have such other and further relief as to the court may seem just and equitable."
The defendant Columbia Trust and Savings Bank filed its answer admitting certain of the allegations in the complaint, denying that the note given by the plaintiff and held by it was without consideration, or that it had knowledge of equities existing against said note, if any there are, denies the other allegations in the complaint on information and belief, pleads as a counterclaim said note and demands judgment for the amount of said note with interest and $500 attorney's fee. A reply was filed to said answer joining issue with the affirmative allegations in said answer. The defendants, Walker and Eckern, answered jointly, denying the issuable matter in the complaint but alleged no affirmative defense. The defendant Bramwell also filed an answer of denials without alleging an affirmative defense. The case came on for trial and during the opening statement of the counsel for plaintiff a motion was made by the defendants, Walker and Eckern, for the dismissal of the suit as to them upon the statement of the counsel for plaintiff. In the course of the proceeding similar motions were made by the other defendants, except the defendant Columbia Trust and Savings Bank and all said motions were allowed. The defendant Columbia Trust and Savings Bank presented its counterclaim, evidence was taken and a judgment rendered in its favor and against the plaintiff for the amount of the note for interest and the sum of $250 attorney's fee and costs and disbursements. The *Page 96 
plaintiff appeals from said decree. The only defendants appearing in this court are Walker and Eckern.
REVERSED.
It is a general rule of law uniformly applied in this country that:
"Where misrepresentations are made to the public at large, or to a particular class of persons, with the intention of influencing any member of the public, or of the class, to whom they may be communicated, any one injured through proper reliance thereon may secure redress. In such a case it is not necessary that there should be an intent to defraud any particular person; but the representation must of course have been intended for the public, or for a particular class of persons to which complainant belonged.
"Under the general rule, the misrepresentor is liable to anyone injured through reliance on false statements contained in * * corporate statements of a public nature, such as bank and insurance reports, * *" 26 C.J. 1121-1123 (§ 48bb). *Page 97 
1 Morse on Banks and Banking (5 ed.), 285 to 289, Section 132, states the rule in this language:
"It often happens that the officers of corporations put forth deceptive and fraudulent reports, and make false statements concerning its affairs, in order to keep up its good repute with the public, and to sustain or raise the price of shares by attracting purchasers. * * Directors are liable for injuries to a person who relies upon a statement issued by them, which they did not know to be true, as well as when they knew it to be false."
Tate, Treasurer v. Bates, 118 N.C. 287 (24 S.E. 482, 54 Am. St. Rep. 719); Houston v. Thornton, 122 N.C. 365
(29 S.E. 827, 65 Am. St. Rep. 699).
"A national bank is required to report five times a year its financial condition to the comptroller of the currency, and publish the reports in a newspaper. While such reports are for the information of the comptroller and stockholders and depositors, they are also for the information of those who contemplate dealing with the bank; and, where a person is misled by false report to part with his money on the security of stock in an insolvent bank, he may recover his loss in an action for deceit against the officers of the bank who signed the false report." 3 Michie, Banks and Banking 1907, 1908.
Jones' National Bank v. Yates, 240 U.S. 541 (60 L.Ed. 788,36 Sup. Ct. Rep. 429, see, also, Rose's U.S. Notes), where it is written:
"If the defendant Thompson participated in or assented to the making and publication of the official reports to the Comptroller of the Currency, which were made in the year 1892, knowing that they were false reports, he was liable to the plaintiffs deceived and damaged thereby under the express terms of the statute; and he could not escape this liability *Page 98 
simply because, while he thus participated or assented, other directors gave the formal attestation." Thomas v. Taylor,224 U.S. 73 (56 L.Ed. 673, 32 Sup. Ct. Rep. 403, see, also, Rose's U.S. Notes), and other authorities cited therein.
This principle is a general one and is as applicable to the reports of directors and officers of state banks as to reports of the directors and officers of national banks. All reports are made for the same purpose and apart from any statutory liability the directors or officers making such false reports are liable under the common law.
"An action for damages for deceit may be maintained against any one who intentionally deceived the plaintiff into making the contract, even though he was not a party to the sale. `In such an action it is immaterial whether the defendant did or did not receive the consideration or other benefit, because the gravamen of the action is that the plaintiff has been deceived to his injury, not that the defendant has profited by the transaction.' So the corporation and its officers and directors may be liable to persons who are induced to purchase stock by reason of false statements in stock certificates, or in prospectuses or reports, issued by them, although they do not themselves make the sale, where the other elements of actionable fraud are present. Of course an action to rescind and to recover the consideration paid can be maintained only against the other party to the contract to whom, or to whose order, the consideration was paid." 6 Fletcher Cyc. Corp., 6550 — 1, § 3878.
Merchants National Bank v. Thoms et al., 28 W.L.B. 164 (Ohio), is a well-considered case. Morse v. Swits, 19 How. Pr. (N.Y.) 275, is a leading case on the rule announced, and is cited with approval in Parsons v. Johnson, 28 App. Div. 5
(50 N Y Supp. 780), and Habeeb v. Daas, 111 Misc. Rep. 437 *Page 99 
(181 N Y Supp. 392), decided April 10, 1920. In Morse v. Swits
the facts were similar to the facts in the case at bar. It is there written:
"I think the tendency of all the later decisions in this country and in England, is in favor of extending the liability of every one who makes a public representation which he knows to befalse, and upon faith in which any one has been led into a business transaction, whereby he suffers damage. I do not understand that it is at all necessary to the right of action that the representations should have been intended for the party sustaining the loss, or in any way addressed to him. If it be made openly and publicly, so that it might well come to his ears, and if it does come to his ears, and he acts upon it, the party making it shall answer to him for the damages. He shall not be at liberty to sow falsehood broad-cast, without being responsible for the loss it causes. * *
"The falsehoods may have been made for one purpose, and published for that; but being published, the public or any individual has a right to believe it. It must have been the intention of the persons publishing it that it should be believed. And if believing it any one of the public acts on that belief, the makers and publishers of this falsehood are to be held liable for the consequences they have caused."
Taylor v. Thomas et al., 195 N.Y. 590 (89 N.E. 1113). The last case cited was affirmed in Thomas v. Taylor, 224 U.S. 73
(56 L.Ed. 673, 32 Sup. Ct. Rep. 403, see, also, Rose's U.S. Notes). See, also, Gerner v. Mosher et al., 58 Neb. 135
(78 N.W. 384, 46 L.R.A. 244).
In all probability the plaintiff would have no defense to an action or suit instituted by the Superintendent of Banks to collect his double liability. As is said in Langtry v.Wallace, 182 U.S. 536, 549 *Page 100 
(45 L.Ed. 1218, 21 Sup. Ct. Rep. 878, see, also, Rose's U.S. Notes).
"Upon the failure of the bank the rights of creditors attached and could not be affected by anything that the bank or its officers might, after such failure, have done or omitted to do. In Earle v. Pennsylvania, 178 U.S. 449, 455 (44 L.Ed. 1146,20 Sup. Ct. Rep. 915, see, also, Rose's U.S. Notes), we held that when a national bank suspends and is placed in the hands of a receiver the entire control and administration of its assets are committed to the receiver and the comptroller, subject to whatever rights of priority, if any, may have been previously acquired by proceedings lawfully instituted against the bank before its suspension. So that the only way in which the defendant could have effectively raised the question of his liability as a shareholder, arising from frauds committed by the bank or its officers before its suspension whereby he was induced to become a shareholder, was by a suit in equity against the bank and the receiver."
Under note 8 in 6 Fletcher's Cyc. Corp., 6551, cited by the respondents, Walker and Eckern, is this excerpt from Tarra v.Novelty Elec. Mfg. Co., 136 Minn. 216 (161 N.W. 409):
"Officers of a corporation who negotiated the sale of stock belonging to it are proper parties to an action by the purchaser to recover back what he has paid, where the money was paid to them and it does not appear that they have ever paid it over to any one else."
In Section 3879 of the same valuable treatise we read:
"A person who is induced to buy or sell stock in a corporation by false and fraudulent representations may rescind the contract and set up the fraud as a defense in an action by the seller for the *Page 101 
price, or on a note given for the price; or if the price has been paid, in whole or in part, in money or property, he may maintain an action at law or in equity, according to the circumstances, to recover what he has parted with; * *. And the complainant may in the same suit seek a rescission, or, if that be inequitable, then to recover his damages."
3 Michie on Banks and Banking, 1882, Section 250 (3bb), explains the same principle in this language:
"Where a subscriber for stock in a national bank became a shareholder in consequence of frauds practiced upon him by others, whether they be officers of the bank or officers of the government, he must look to them for such redress as the law authorizes, and is estopped, as against creditors, to deny that he is a shareholder, within the meaning of section 5151, if at the time the rights of creditors accrued he occupied and was accorded the rights appertaining to that position. He is not entitled to a rescission unless he affirmatively shows that there are no creditors who became such while he was a registered stockholder. Fraudulent representations by which a person is induced to become a stockholder of a national bank constitute no defense in an action at law by a receiver of the bank to enforce the statutory liability of the stockholders, as the defense is of an equitable nature, and must be asserted, if at all, in equity." 1 Cook on Corp. (8 ed.), 526, § 155.
In the instant case the plaintiff alleges that his name was not on the register of stockholders at the time the bank passed into the hands of the Superintendent of Banks. Other allegations are made tending to show that no credit was ever extended to the bank based on the fact that the plaintiff was a stockholder.
"He claims exemption from the responsibility attaching to him, under the statute, as a shareholder, *Page 102 
upon the ground that in consequence of the frauds practiced upon him he was entitled to disaffirm, and that he had upon due notice to the receiver disaffirmed, the contract under which he purchased the stock in question. He seeks to have the certificate received by him treated as canceled. Clearly such a defense is of an equitable nature, and could not be recognized and sustained except in some proceeding to which the bank, at least, was a party. If the defendant was entitled, under the facts stated, to a rescission of his contract of purchase, and to a cancellation of his stock certificate, and consequently to be relieved from all responsibility as a shareholder of the bank, he could obtain such a relief only by a suit in equity to which the bank and the receiver were parties." Lantry v. Wallace, 182 U.S. 536
(45 L.Ed. 1218, 1224, 21 Sup. Ct. Rep. 878, see, also, Rose's U.S. Notes); Barcus et al. v. Gates et al., 89 Fed. 783 (32 C.C.A. 337); Bank of Gresham v. Walch, 76 Or. 272 (147 P. 534);Ashmead v. Colby et al., 26 Conn. 237.
The Circuit Court appears to have held that plaintiff was not entitled to rescind his purchase of stock or to recover from the defendants, Walker and Eckern, in this proceeding because the plaintiff had no direct contract with them. We do not conceive that to be the law. The frauds were perpetrated by the defendants, Walker and Eckern. The false representations were made over their signatures. They are presumed to have known the condition of the finances of the bank. It was their duty to know them. It is further alleged that in addition to making the false reports which misled the plaintiff and induced him to buy the stock the defendants, Walker and Eckern, were managers of the affairs of the bank, and so mismanaged its affairs as to cause it to become insolvent. Among other things they were *Page 103 
charged with having made excessive loans contrary to the law. They were also charged with having made loans to corporations of which they, Walker and Eckern, were the owners. That the evidence of the indebtedness of such corporations was worthless. Other acts contributing to the insolvency of the bank are charged against them. They are responsible, therefore, either in damages or for the return of the money the plaintiff paid for the stock, for it is alleged that the shares purchased by the plaintiff were in fact shares of stock owned by Walker and Eckern although said shares were held in the name of a corporation. Plaintiff alleges that said corporation was a device of the defendants, Walker and Eckern, created and controlled by them for the express purpose of avoiding double liability on such shares of stock. They got the money paid by plaintiff for his stock. Under this state of the pleadings a suit in equity was the proper proceeding to afford the plaintiff such relief as he is entitled to. In a similar case reported in Ginn v. Almy, 212 Mass. 486, 506 (99 N.E. 276,285), the court uses this language:
"But if through any instrumentality he chose to employ, whether corporate or personal, the frauds conceived by him were committed solely in furtherance of his own purposes, and for his own profit directly or indirectly, as the report decisively shows, the company should not be held responsible." (Authorities cited therein.) (Craft v. South Boston R.R., 150 Mass. 207
(22 N.E. 920, 5 L.R.A. 641); Ashley v. Winkley, 209 Mass. 509
(95 N.E. 932).
The defendant bank itself could not be held liable under the authorities hereinbefore cited for the fraudulent acts of the defendants, Walker and Eckern. It and the Superintendent of Banks are *Page 104 
made parties doubtless because the plaintiff seeks to have his certificate of stock canceled. For that purpose both the defendant bank and superintendent are proper parties.
The statement of the plaintiff followed reasonably closely the complaint. The attorney for the plaintiff seemed a little confused when interrupted in his opening statement as to whether he was relying on tort or on a contract. From our view in so far as this appeal is concerned it is immaterial. He had a good cause of action against the defendants, Walker and Eckern. In any event the suit should not have been dismissed, therefore, as to them: Or. L., § 390; Simpson v. First Nat. Bank, 94 Or. 147, 162
(185 P. 913.)
The Circuit Court seems to have recognized the principle that equity having acquired jurisdiction for one purpose will retain it, and dispose of all issues presented, whether equitable or legal, because it retained the case and determined the liability of the plaintiff on the note held by the defendant Columbia Trust and Savings Bank which was clearly an action at law. A court of equity having jurisdiction to determine the issue as to the right of plaintiff to rescind, have his stock certificate canceled and to have an injunction against the defendant Superintendent of Banks from prosecuting an action against him on his double liability had jurisdiction to determine all the issues, whether equitable or legal: Pomeroy, Eq. Jur., § 236; 21 C.J. 134; Templeton v. Bockler, 73 Or. 494, 509
(144 P. 405).
21 C.J., cited by respondents, Walker and Eckern, Section 808, is as follows:
"Dismissing a bill at the close of plaintiff's case, before defendant presents or rests his case, is not *Page 105 
correct practice in equity, in the absence of express provisions to the contrary."
In the instant case the plaintiff was not permitted to put on any of his evidence. It is a very dangerous practice to determine a case as complex and complicated as is the instant case upon statement of the counsel for plaintiff made at the beginning of the trial. We learn from the briefs that the complaint was tested by demurrer upon argument and consideration of briefs. The Circuit Court overruled the demurrer. In the light of that fact as well as correct equity practice, the plaintiff should have been permitted to adduce his evidence and the case determined upon its merits.
Nothing herein written should be construed as an expression of an opinion of the merits of the instant case. We do hold that the complaint states a cause of suit; that all of the defendants are proper parties; that plaintiff's open statement is in harmony with his complaint; that the Circuit Court erred in dismissing the suit as to any of the defendants, and that the court should have heard the testimony, and then decided the case according to equity and justice.
The defendants, Walker and Eckern, are not entitled to a jury trial. They are rightfully in a court of equity. The fact, if it be a fact, that defendant Olson was deceived and duped by his codefendants, Walker and Eckern, and then was used by them to further their alleged scheme to unload their worthless stock on innocent parties including the plaintiff adds another ground for equity jurisdiction. No charge is made against Olson except that he signed one of the statements of the bank's liabilities and resources after plaintiff had purchased stock. *Page 106 
No relief is sought from Olson. He should be retained as a party to the suit because he participated in the sale of the stock to plaintiff, is payee in the note sought to be canceled, and indorsed said note to defendant Columbia Trust and Savings Bank.
In so far as the right of the defendant Columbia Trust and Savings Bank to recover on the note from plaintiff is revealed by the record, we believe the court to have rendered the correct judgment, but in view of the allegations of the complaint and the statement of the counsel for plaintiff that the note was conceived in fraud, that the present holder had knowledge of that fraud, and the plaintiff was prevented from introducing the evidence of such alleged fraud by dismissing the suit as to the other defendants we are of the opinion that the judgment against the plaintiff should be reversed so that the entire matter can be tried and determined upon its merits. As to the effect of fraud in the inception of a promissory note, see Sections 7848, 7850, 7851, Or. L.; American Nat. Bank v. Kerley et al., 109 Or. 205
(220 P. 116, 32 A.L.R 262); Bank of Jordan Valley v.Duncan, 105 Or. 122, par. 8 (209 P. 149); Bank of Gresham
v. Walch, cited above. The judgment against plaintiff and in favor of the defendant Columbia Trust and Savings Bank and the order dismissing the suit as to all other defendants is reversed and the case remanded to the Circuit Court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
McBRIDE, C.J., and BURNETT and RAND, JJ., concur. *Page 107