[No. 37748. Department One. November 18, 1965.]

VIOLA MCCARTY, as *Administratrix, Appellant,* v. R. O. HAGEN *et al., Respondents.**

*Geraghty, Lundin & Geraghty,* by *Patrick A. Geraghty, Jr.,* for appellant.

*Hoover, Lind & Parkhurst,* for respondents.

PER CURIAM.—Bert L. McCarty, the original plaintiff in this action, was a licensed real-estate salesman in the employ of White & Bollard, Inc. Plaintiff brought this action to recover a real-estate commission of $19,725, payable to his employer, plaintiff's assignor, as a result of defendant Hagen's written promise to pay such commission if a sale was "consummated and the property sold." After lengthy negotiation, McCarty effected an option agreement dated June 23, 1961, between the defendant-respondent R. O. Hagen, as seller, and Charles G. Flanagan, as buyer, for the purchase of a large apartment house on Queen Anne Hill in Seattle, the price to be $557,500. The option provided

*Reported in 407 P.2d 953.

that it should be exercised within 30 days of execution, and the closing date for the sale contemplated by the option was to be no later than September 1, 1961. The option was exercised by Charles G. Flanagan in a letter written to Mr. Hagen on July 21, 1961, which, plaintiff alleges, became in effect an earnest money agreement specifically enforceable by either party. The letter also requested that the date for closing the sale be extended from September 1, 1961, to October 1, 1961, and that this extension, if acceptable, be acknowledged in writing. Mr. Hagen did not reply in writing, although on several occasions prior to October 1, 1961, Mr. Flanagan was told by defendant that there was no hurry to close the transaction and that he might have at least until November 1, 1961, to close the transaction.

On October 2, 1961, without advance notice to Mr. Flanagan, Mr. Hagen placed in escrow with the Puget Sound Title Insurance Company a warranty deed to the apartment property. The escrow instructions which accompanied this deed stated that they were to be in effect until October 2, 1961. These instructions were delivered to Mr. Flanagan's office late in the afternoon of October 2, 1961, and, inasmuch as he was not at his office until 5 o'clock that afternoon, he did not see them until the close of the business day.

Mr. Flanagan stated that Mr. Hagen had told him there was no hurry and that he could have until November 1st, if he wanted the time. Mr. Flanagan also stated that approximately a week before October 1st he had discussed the matter with Mr. Hagen's attorney, who told him that he didn't think Mr. Hagen was in any hurry to close the deal.

On October 10, 1961, Mr. Hagen's attorney withdrew the warranty deed from escrow and advised Puget Sound Title Insurance Company that the deal was off.

On October 10, 1961, Mr. Flanagan deposited $50,000 in escrow with Puget Sound Title Insurance Company and on October 27th deposited the balance of the contract requirements. Mr. Hagen continually refused to consummate the transaction, although Mr. Flanagan for some time thereafter attempted to effect the consummation. Eventually

Mr. Hagen and Mr. Flanagan entered into a settlement agreement which specifically excepted any rights to a commission that the real-estate broker McCarty might have.

Counsel for the plaintiff, in his opening statement presented substantially the allegations as described above.

Following the opening statement of both counsel,, plaintiff's counsel said: " . . . If the Court feels that based upon the proof that we have offered that we do not have a cause of action, — " and the court replied:

Well, I think I might be ready to rule, but I think in fairness to you I ought to let you make a record so if you want a record you can have it, and that would certainly include the facts concerning the extension. . . . You may make an offer of proof, if nothing further than that—I mean, as the record stands now I do not think you have anything upon which to go to the Supreme Court. . . . [Counsel for plaintiff]: As a matter of law, what I would suggest is that we be allowed to put our offer of proof in writing and the Court can look at the briefs again and possibly reconsider this matter. THE COURT: Put your offer of proof in writing, you haven't got it in the record now at all have you? [Counsel for plaintiff]: No. I would like to put Mr. Denton's deposition in the record. We could read it in and there could be objections made as to the deposition as the defense sees fit. We could read Mr. McCarty's deposition in the record. This was a pre-trial deposition, which we now offer because he is dead. As to the rest, we could make an offer of proof. THE COURT: Well, you have Mr. Flanagan sitting behind you. You may want him on the stand. MR. VOLINN [Counsel for plaintiff]: I would be pleased to put Mr. Flanagan on the stand and then that way he can testify, but what I am getting at, your Honor, is that if the Court is ready to rule based upon what the Court's impression of the facts is, and I believe the Court's impression is generally correct, the testimony that would be put on wouldn't be calculated to change the Court's mind. I would rather make an offer of proof. It would mean a shorter record and in that manner we can present the issue more clearly. THE COURT: Well, in effect now what you are getting is a summary judgment. MR. VOLINN: That is right. That is exactly right, your Honor. I would like to state our facts in a more orderly form and

then we can go up on a short record. THE COURT: Well, what do you think, gentlemen? MR. SCHOLFIELD [Counsel for defendant]: . . . if . . . Mr. Volinn wants to make an offer of proof, and then ask the Court to rule on it one way or the other. That would be agreeable with us, but we want to go ahead with this trial and get it over with now . . . we want the plaintiff to go ahead to the point where he rests his case. THE COURT: He is now rested. MR. VOLINN: I will file my offer of proof . . . we can have it filed by five o'clock tomorrow, which would probably take less time than trying this case. THE COURT: There is no question about that. All right. I will grant judgment on the opening statement. There being no further proof before me on the opening statement I will grant judgment for the defendant. . . . MR. SCHOLFIELD: . . . I don't know where we are here . . . we want a disposition made of this case at this time, which will stand up on appeal. This business of granting a judgment based upon an opening statement, to my sketchy memory having read a few decisions on this, it is a risky business. But if the Court has before it an oral offer of proof which would be the maximum that the plaintiff's proof could go and the Court then ruled upon that, then I think that the defendant would have some protection here. . . . THE COURT: . . . Mr. Volinn, now is the time to put in your offer of proof, if you want to put it in. . . . MR. VOLINN: . . . pursuant to our agreed procedure of making an offer of proof on the part of the plaintiff, I will make the following offer: . . . .

There was then offered all facts set forth in request for admissions as facts whether answered or not, together with the attached documents, the depositions of witnesses.

There was also incorporated in the offer the various statements of fact or facts that plaintiff had proposed to prove, the opening statement of defendant's counsel, the statements of facts set forth in the trial memorandum.

THE COURT: I will admit all documents in the offer of proof . . . . *A great deal of it will not be considered,* but the material part will be considered. (Italics ours.)

After the offer of proof had been completed, the court sua sponte declared:

And now I will render judgment for the defendant and find that the extensions were not made in a timely manner and within a reasonable time; that the conduct of the defendant Hagen indicates that he did extend it to October 2, and he may have extended it to October 16, but at that time he had extended all of the time which was reasonable.

It is noted that the defendant did not move for a dismissal but that the court voluntarily gave a dismissal.

Findings of fact and conclusions of law consonant with the court's oral pronouncement were made and judgment for the defendant rendered thereon.

The court having made findings of fact we assume it weighed the evidence.

No evidence was introduced. No witnesses were sworn and testified. The case was decided by the court upon the opening statement of plaintiff's counsel. True, depositions and documents were admitted as exhibits in the offer of proof, but same did not become evidence in the case.

▮ Normally an offer of proof is made in connection with a question which has been ruled out by the court, so that the court may "review, revaluate, and, in its discretion, perhaps revise, its prior ruling." *Cameron v. Boone,* 62 Wn.2d 420, 425, 383 P.2d 277 (1963). Here, the offer was made in connection with and as part of the opening statement and in lieu of a further verbal or written statement to the court of proof counsel expected to elicit.

The function of an opening statement of counsel is to *briefly* state the issues and the proof thereunder which it is expected to elicit. 2 Bancroft, Code Practice and Remedies § 1385, p. 1857.

In *Lane v. Portland Ry., Light & Power Co.,* 58 Ore. 364, 368, 114 Pac. 940 (1911), the Oregon Supreme Court said, with reference to the opening statement:

This statement is the privilege of the attorney for each party, if he sees fit to exercise it.

The opening statement is obviously intended to advise the jury concerning the questions of fact involved, in order to prepare their minds for the evidence to be heard, but is not intended to take the place of a complaint

or other pleading, and how full it shall be, within reasonable bounds, is left to the attorney's discretion. To relate the testimony at length will not be tolerated. 1 Thompson, Trials, § 267.

The opening statement in this case includes not only documents but entire depositions. It is not proper practice to attempt to include evidence as part of the opening statement. This court should not be required on appeal to wade through materials that would have been best sorted out at trial. The trial court remarked that a "great deal will not be considered." We have no indicia as to what this "great deal" is.

▇ In passing, we note that the trial court erred in making findings of fact based on the opening statement. If a court is impelled to decide a case on the opening statement, it is limited to a determination as to whether there is a sufficient cause of action stated. However, a different rule applies after the case has proceeded to trial and a motion to dismiss is interposed at the close of plaintiff's case. In that posture, depending on the facts, the court may decide that as a matter of law a prima facie case has not been established and dismiss the case or weigh the evidence and dismiss. In the latter event, findings of fact are appropriate. *Richards v. Kuppinger,* 46 Wn.2d 62, 278 P.2d 395 (1955); *Robertson v. Club Ephrata,* 48 Wn.2d 285, 293 P.2d 752 (1956).

The case is remanded to the superior court for trial on the merits. Nothing said herein should be construed as an expression of an opinion of the merits of the instant case. Costs will abide trial.