Argued March 16, decided April 4, 1911.

# LANE *v.* PORTLAND RY., LIGHT & POWER CO.

[114 Pac. 940.]

TRIAL—CONDUCT OF TRIAL—OPENING STATEMENT.
1. Under Section 132, L. O. L., providing that the plaintiff shall briefly state his cause of action, and the defendant his defense, after the jury has been impaneled and sworn, the attorney for either party has the privilege of making such a statement.

TRIAL—CONDUCT OF TRIAL—OPENING STATEMENT—LENGTH AND SCOPE.
2. The opening statement is to advise the jury of the questions of fact, but is not intended to take the place of the complaint or other pleading, and it rests largely in the discretion of the attorney how full it shall be.

TRIAL—CONDUCT OF TRIAL—OPENING STATEMENT—DISMISSAL ON OPENING STATEMENT.
3. It is not a safe practice to decide a case upon the opening statement of counsel to the jury, except where it unmistakably appears that the action is based upon a contract prohibited by morality or public policy.

TRIAL—JUDGMENT ON OPENING STATEMENT.
4. Where the complaint in an action against a street railroad company for injuries alleged that, while plaintiff was crossing defendant's track with his team and light wagon behind a standing car, which necessarily

obstructed his view, a declaration by plaintiff's attorney in his opening statement that plaintiff was not able to see the car and not able to hear it, followed by a reading of the complaint, did not indicate how far the plaintiff could or could not see before crossing the tracks, and cannot be taken as an admission that plaintiff failed to look and listen at the proper place for doing so ; and hence it was error to render judgment for the defendant on the pleadings and opening statement.

STREET RAILROADS—OPERATION—ACTIONS—QUESTIONS FOR JURY.
5. The law does not require one crossing street car tracks to look and listen at any particular time or place.

STREET RAILROADS—COLLISION WITH VEHICLE—CONTRIBUTORY NEGLI-
GENCE—JURY QUESTION.
6. Whether a driver of a team looked and listened at the appropriate time and place before driving on a street railroad track is for the jury.

From Multnomah:  CALVIN U. GANTENBEIN, Judge.

Statement by MR. JUSTICE BEAN.

This is an action by Isaac Lane against the Portland Railway, Light & Power Company, to recover damages for alleged injury to the person and property of plaintiff, resulting from the collision of defendant's electric car with his team and wagon on November 19, 1908, in the city of Portland, occurring on Grand Avenue, near its intersection with Hawthorne Avenue, upon which street, running north and south, defendant maintains two parallel street car tracks. At the time of the casualty a northbound car was standing on the east track, a short distance north of the north line of Hawthorne Avenue. Plaintiff alleges that he was traveling north on the easterly side of Grand Avenue; that the space between the standing car and the east curb of the street was occupied and blocked by teams and wagons, preventing his passage on that side, so that in order to proceed he was compelled to cross over to the west side of the street, passing the rear end of defendant's standing car, and that while he was in the act of so doing his view was necessarily obstructed by such car, so that he was prevented from seeing a southbound car, which was approaching "at a high, unnecessary, and dangerous rate of speed along defendant's westerly track of said avenue,

and the defendant, by its officers, agents, and motorman on said car No. 356, without warning, negligently, carelessly, and heedlessly ran said car No. 356 at such speed into and upon the wagon of this plaintiff in which he was riding, thereby colliding with the plaintiff's wagon and thereby throwing plaintiff out of the seat of said wagon and upturning the same," causing injury . to plaintiff and his wagon and team. That defendant, by its agents on said car, could and should have seen plaintiff's team emerging from behind its standing. car in time to have "slowed up" and stopped its car, and so prevented the collision and the resultant injury to plaintiff, but that defendant, disregarding plaintiff's rights, failed and neglected to "slow up," and, without fault on the part of plaintiff, collided with his team and vehicle to his damage.

Defendant, by its answer, denies the material allegations of the complaint, and by its first separate answer, after describing the accident, alleges that plaintiff suddenly and unexpectedly, without any warning, drove his team and wagon from out behind the standing northbound car and immediately in front of and into said southbound car, before the latter could be stopped, although due care and diligence in that behalf was exercised, the collision ensuing, and that said accident was wholly unavoidable, and without negligence on the part of defendant. By its second separate answer defendant alleges contributory negligence on the part of plaintiff as the proximate cause of the injury complained of, in that he failed to look or listen for a car approaching on the west car track, and, without exercising any precaution for his own safety, suddenly and unexpectedly drove his team from behind the standing northbound car directly in front of the southbound car, so that before the latter car could be stopped, although due care and diligence in that behalf was exercised, the collision occurred. The

reply put in issue the new matter contained in the answer.

Upon a jury being impaneled and sworn to try the cause, plaintiff's counsel made his opening statement, which appears in full in the record. After narrating to the jury some of the facts and circumstances surrounding the accident, what the plaintiff would prove by his evidence, and the alleged grounds of the negligence upon which he relied, he, among other things, stated:

"It will appear, I think, from the evidence that he was unable to see north through this obstruction—in. other words, through this car that was standing there; and while he was making the crossing this car of the defendant came in a south direction on the westerly track in front of the Brown building, and when he did see the car, why he whipped up his horses and got pretty near across the track, but the car was coming at a very rapid rate of speed—too rapid—I don't know what the rate of speed will appear in evidence here. * * The approach of the car was of such a character that the plaintiff here was not able to see, or not able to hear; and no gong sounded, or bell rung, no warning given, and the rate of speed was excessive— The Court: You say the plaintiff was not able to see the car, and was not able to hear it? Counsel (proceeding) : The plaintiff was not able to see the car, and was not able to hear it. * * Now, I will read the complaint, which, perhaps, states more fully the facts."

And, after reading the complaint in full:

"Now, gentlemen of the jury, the testimony will show you, I think, about this state of facts. * * This is the complaint here, gentlemen of the jury, and we expect that the testimony will establish these facts."

Thereupon defendant, by its attorney, made its opening statement to the jury. Upon plaintiff being called and sworn as a witness in his own behalf, defendant's counsel, based upon the opening statement of plaintiff's attorney to the jury, and upon the pleadings in the case, objected to the introduction of any evidence and moved the court for an order dismissing the action.

The court rendered judgment in favor of defendant on the pleadings and opening statement, from which plaintiff appeals.

For appellant there was a brief over the names of *Messrs. Charles D. & D. Clinton Latourette* and *Mr. J. R. Latourette* with an oral argument by *Mr. D. Clinton Latourette.*

For respondent there was a brief over the names of *Messrs. Wilber & Spencer, Mr. Wilfred E. Farrell* and *Mr. Arthur M. Dibble* with an oral argument by *Mr. Arthur C. Spencer.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. The statute of this State, Section 132, L. O. L., provides that when the jury has been impaneled and sworn "the plaintiff shall state briefly his cause of action, and the issue to be tried; the defendant shall then in like manner state his defense." This statement is the privilege of the attorney for each party, if he sees fit to exercise it.

2. The opening statement is obviously intended to advise the jury concerning the questions of fact involved, in order to prepare their minds for the evidence to be heard, but is not intended to take the place of a complaint or other pleading, and how full it shall be, within reasonable bounds, is left to the attorney's discretion. To relate the testimony at length will not be tolerated. 1 Thompson, Trials, § 267. As we understand the record in this case, counsel for plaintiff read the complaint, and in effect stated that he expected the evidence to prove the facts therein alleged; therefore the only question to be determined by the court is whether or not the complaint states the cause of action. This was practically conceded by the defendant when it filed its answer; moreover, if defendant had the right, and desired to take advantage of counsel's statement for plaintiff, the better time would

have been at the close of such statement, before plaintiff was called to the witness stand, and before defendant's counsel made his opening remarks to the jury.

3. Assuming the statement of plaintiff's counsel to be fatally defective, we seriously question if the right to rely on such defect was not waived by defendant's failure to make a timely motion. We do not consider it a safe practice to decide a case upon the opening statement of counsel to the jury, that such a procedure is conducive to the rights of litigants, or that there is great necessity for exercising this power, except in cases where it unmistakably appears that the action is based upon a contract prohibited by morality or public policy. In *Oscanyan* v. *Winchester Arms Co.,* 103 U. S. 261 (26 L. Ed. 539), the statement disclosed that action was brought upon a contract for commissions on a sale of arms to Turkey, of which government plaintiff was then consul general at the port of New York, and the contract was void, being corrupt and prohibited by morality and public policy. Mr. Justice Field, in his opinion in this case, at page 264 of 103 U. S. (26 L. Ed. 539), says, in substance, that if it should appear from the opening statement that the action is brought to obtain remuneration for acts which the law declares to be corrupt, immoral, or criminal, after full consideration and ample opportunity for the party making the statement to explain and qualify it, if then, it clearly appears that there can be no recovery, the court should not hesitate to so declare. In *Pietsch* v. *Pietsch,* Cent. Law J. of August 5, 1910, vol. 71, p. 81, a suit in forcible detainer for the possession of a lot in Chicago, begun in the municipal court of that city, based upon the statement of counsel for defendant, admitting the legal title of the lot to be in plaintiff, the court instructed the jury to render a verdict in favor of the plaintiff. The appellate court for the first district

affirmed the judgment, and the Supreme Court of Illinois, in reversing the case, on this point, said:

"A party is entitled to introduce evidence and prove a cause of action or to defend against evidence tending to sustain a cause of action if no statement at all is made, and is not confined in the introduction of evidence to the statement made in the opening, if one is made. The opening statement may be wrong as to some facts, and there is no requirement that it shall give all the facts of the case, which may turn out to be different from the statement."

Also in *Fletcher* v. *London & Northwestern Ry. Co.,* 65 L. T. R. 605, an English case for personal injuries, where the trial judge nonsuited the plaintiff, for the reason that the opening statement of his counsel did not show a cause of action, it was held that the judge had no right to so nonsuit plaintiff, except by the consent of his counsel.

The practice of granting a nonsuit, much less the dismissing of the complaint on the opening statement, has never prevailed in Wisconsin, and in *Haley* v. *Western Transit Co.,* 76 Wis. 344 (45 N. W. 16), and cases there cited, was not permitted, even though the counsel consented that such statement should be considered in connection with the complaint and treated as a part thereof; but in Kansas such practice appears to have been sanctioned in *Lindley* v. *A. T. & S. F. Ry. Co.,* 47 Kan. 432 (28 Pac. 201).

4. As we understand the record in this case and the claim of counsel for defendant, the ruling was based principally upon the statement of plaintiff's counsel that plaintiff was "not able to see the car, nor able to hear it." Very naturally counsel for defendant applies this statement as referring to the time before plaintiff crossed the tracks. By reference to the direct allegation in the complaint, that it was "while plaintiff was in the act of making such crossing with his team and light wagon before

mentioned, his view was necessarily obstructed by defendant's aforesaid standing car, so as to prevent his observation of another of defendant's cars," and the statement of plaintiff's counsel, to the effect that plaintiff was unable to see through this obstruction, it would seem that counsel for plaintiff had in mind the time when plaintiff was crossing the east track behind the standing car. We do not understand that either the complaint or the statement of plaintiff's attorney indicates how far, or what plaintiff could or could not, see or hear before the time of crossing the tracks. This case illustrates the danger of deciding an issue upon so meagre a showing of the facts.

5. The case of *Donohoe* v. *Portland Ry., L. & P. Co.,* 56 Or. 58 (107 Pac. 964), disposes of the point in regard to looking and listening adversely to defendant, where, in the language used by Mr. Justice Slater, "it has also been held by this court that, although it is negligence for the traveler not to look or listen for approaching trains before attempting to cross a railway track, the law does not undertake to determine whether he shall do so at any particular place or given distance from the crossing."

6. "It is only required that he shall look and listen at the time and place necessary in the exercise of ordinary care, and this is generally a question for the jury under all the circumstances of the particular case."

We do not deem it opportune to discuss this case at length, although several questions that may possibly arise are ably presented by the briefs of the respective counsel. In our opinion the case should be tried. The judgment of the lower court is accordingly reversed, and the cause remanded for trial.

Mr. Justice Burnett concurs in the result.

                                        Reversed.