Argued December 6, 1962, reversed and remanded January 23,
petition for rehearing denied February 13, 1963

## PALMER *v.* MURDOCK ET AL

378 P. 2d 271

*Kenneth A. Morrow,* Eugene, argued the cause for
appellant. With him on the brief were Venn, Mulder &
Morrow, Eugene.

*James H. Clarke*, Portland, argued the cause for respondents. With him on the brief were Koerner, Young, McColloch & Dezendorf and Wayne Hilliard, Portland.

Before McALLISTER, Chief Justice, and O'CONNELL, GOODWIN, LUSK and DENECKE, Justices.

## O'CONNELL, J.

This is an action for personal injuries and property damages resulting from a collision between plaintiff's automobile and defendants' truck. Plaintiff appeals from a judgment of involuntary nonsuit entered after plaintiff had made his opening statement and before he had introduced any evidence.

The collision occurred at the intersection of Fifth avenue and Lincoln street in Eugene, Oregon. Plaintiff's complaint alleged various specifications of negligence on the part of defendant and further alleged that defendant had the last clear chance to avoid the injury. In his opening statement counsel for plaintiff admitted that plaintiff was negligent in entering the intersection. However, he contended that defendant discovered that plaintiff was in a position of peril from which he could not extricate himself, and that after such discovery defendant could have avoided the collision by the exercise of ordinary care.

In the opening statement plaintiff's counsel, with the aid of a diagram which he had drawn on a blackboard, stated that evidence would be presented to establish the following facts. Lincoln street runs north and south. It is intersected by Fifth street which runs east and west. Both streets provided for two-way traffic. Neither street contained stop signs or

any other traffic signals at the intersection. Plaintiff approached the intersection from the west. Defendant approached the intersection from the south. Plaintiff's counsel gave the following explanation as to the manner in which the collision occurred:

"* * * [Plaintiff] didn't see any vehicles approaching until he got going—until just as his vehicle nosed into this intersection.

"That is the time he saw, and hadn't seen before, the truck which belongs to this corporation—the trucking company; that was, at the time, being driven by Mr. Murdock who at the time was working for them, and he was carrying out their business, and which was probably about a car length or a little more back of the sidewalk area—the south sidewalk area on Lincoln Street. In other words, the sidewalk extended across the street here (counsel indicating) about a car length.

"Mr. Murdock—or Mr. Palmer wasn't paying any particular attention to his speedometer. As most drivers can and are capable of, he can estimate his speed and he thinks he was doing fifteen, maybe fifteen to twenty miles an hour as he got to this place. We would estimate the speed of the truck at about the same or a little more. He didn't get an awful long look at this truck.

"* * * He did not see this truck as he approached down here (counsel indicating). * * * So from the very beginning, the plaintiff starts out this case admitting that he was negligent in getting himself into this intersection. He should have stopped and let this truck go on through. However, as I say, before he first saw this truck back at this point (counsel indicating) and when he just entered the intersection he first became aware of it, and it is plaintiff's contention that at that point and from there on, he was in a position of peril and in a position of danger from which he could not extricate himself. He couldn't get out of there. It was out of his hands at that particular point. He

couldn't have stopped in time, because he would have been right out in the intersection. He thought, and we will contend, and we believe the evidence will prove that he would have had an opportunity to miss this truck if he had gone ahead and given him a little more room in the turn-around. There was nobody coming from here (counsel indicating) for at least a block away. So when Mr. Palmer saw this truck, he stepped on the accelerator, but contends it did not have much significance because he wasn't going very fast, and he couldn't gain over a mile or two an hour, and turned to the left over into the other side of the highway, thought he was clear and was coming back to his side of the road, when he again looked to see where the truck was, and at that point he saw the front of it about three feet from the front of his truck. Then at that time, he heard the truck's brakes being applied.

"* * * He [plaintiff] did not exercise due care and he got into this intersection, but once there, he was in a position of peril from which he could not escape, and we will show further that Mr. Murdock saw him in this position of peril and that he saw him when he was at a stopping place, and there was time that had he exercised reasonable care and stopped at the time he saw him, and saw he was going to go ahead through the intersection, this accident could have been avoided. The injuries—all to a great extent the injuries could have been avoided had Mr. Murdock exercised his last clear chance to avoid the accident.

"There is further evidence, I do not want to declare it all, because, I think it takes away somewhat from the witnesses who testify. In other words, they are the ones from whom you wish to hear the evidence."

At the conclusion of plaintiff's opening statement defendants moved for a judgment of involuntary nonsuit upon the ground that the facts which plaintiff proposed to prove would conclusively establish that

defendant could not have had a last clear chance to avoid the collision since plaintiff's negligence continued up to the point of the collision. In the argument which followed the motion plaintiff's counsel stated:

"There was mention that I may have stated in my opening statement that defendant did not have an opportunity to avoid the accident. If so, it was inadvertent, but it was at about ten feet from the intersection, immediate intersection, that was a car length from the sidewalk; I didn't go into the details, but we contended that the sidewalk was eleven feet from the intersection and a car length could be anywhere from eighteen to twenty-four feet back at the time the plaintiff hit him."

The trial court gave the following explanation for granting defendants' motion for an involuntary non-suit:

"It appears to the Court, therefore, that the negligence of the plaintiff did not come to rest merely by reason of the violation of the right-of-way rule but continued right up to the moment of impact; because counsel in his opening statement says the plaintiff turned his vehicle to the left, attempted to avoid the accident, and then, he turned back to his own side of the road into a position of danger; and when, had he been in the exercise of due care, he must have known he could not have avoided the collision under such circumstances of the record at the time. Therefore, it does not appear that as a matter of law, the last clear chance applies to this case at all * * *."

In response to the court's explanation of its ruling plaintiff's counsel stated:

"* * * [T]hat the evidence will show conflicting evidence as to whether or not there was a swerve back to his side of the road or not, and that the swerve was not back to his side of the road but back in the direction of his side of the road;

and that the swerve in no way whatever made any difference as to whether or not the accident would have happened.

"We suggest that the Court can't under those circumstances assume from the evidence that the swerve would, in fact, make any difference as to whether the accident would have occurred and, therefore, is assuming evidence it doesn't have before it and, therefore, the ruling is improper at this time."

To this the court responded:

"The Court's ruling, of course, has to be based, Mr. Morrow, on the opening statement and matter contained therein as to the law, and not on matter which you now state to the Court because this is not a part of anything which may have been included in your opening statement, and the Court's ruling, of course, is based upon that statement."

There are numerous reported cases in which the plaintiff's right to go to the jury has been challenged on the ground that the evidence conclusively negatives defendant's last clear chance to avoid the injury.[1] The cases are in conflict. They are difficult or impossible to reconcile even with a particular jurisdiction.[2] Generally the judicial inquiry in these cases as to whether

---

[1] For a collection of cases see the footnotes accompanying § 3.47 in 3 Berry, Automobiles (7th ed 1935 and Supp 1947). In all the cases we have examined the trial court's ruling has been made either at close of plaintiff's case or when both plaintiff and defendant have put in their evidence.

[2] "The application of the doctrine has been attended with much confusion. Virtually every possible rule has been adopted, often in a single jurisdiction * * *." Prosser, Torts, p. 292 (2d ed 1955). For example, see the California cases discussed in Garon, Recent Developments in California's Last Clear Chance Doctrine, 40 Calif L Rev 404 (1952); Hale, Last Clear Chance Trend in California, 13 Hastings L J 141 (1961); Comment, Intersectional Collisions and California Last Clear Chance, 1952-1953 UCLA (Intramural Vol) L Rev 27.

the defendant's chance to avoid the injury was the "last" and the "clear" chance is accompanied by fine calculations as to the relative position and speed of the vehicles, the distance within which defendant could stop his vehicle, the point at which plaintiff was in inextricable peril, and the point at which it was discovered by the defendant. The cases are further complicated by the introduction of the theories of proximate cause and "continuing negligence." The extent to which these calculations are turned to benefit plaintiff or defendant appears to depend in large measure upon the particular court's attitude as to the respective functions of court and jury in negligence cases and the court's attitude toward the defense of contributory negligence.[9]

Because of these confusing elements in the cases they are of little or no value in finding the correct solution to the present case. Moreover, all of the evidence supporting the plaintiff's case was before the court in those cases, whereas in the case at bar we do not know what evidence plaintiff could introduce were the case to be tried.

---

[9] "The variety of irreconcilable rules, all purporting to be the same, and the lack of any rational fundamental theory to support them, suggest that the 'last clear chance' doctrine is more a matter of dissatisfaction with the defense of contributory negligence than anything else. In its application, it is not infrequent that the greater the defendant's negligence, the less his liability will be. The driver who looks carefully and discovers the danger, and is then slow in applying his brakes, may be liable, while the one who does not look at all, or who has no effective brakes to apply, may not. Recognition of the absurdity of such distinctions has played a considerable part in the extension of the doctrine to new situations." Prosser, Torts, pp. 295-96 (2d ed 1955).

2 Harper & James § 22.14, p. 1256 (1956) suggests that the manner of applying the doctrine of last clear chance may depend upon the judicial attitude towards the idea of comparative negligence and the extent to which compensation and fault should constitute the basis for liability.

Treating the present case as if all of the evidence plaintiff could adduce was described in the opening statement, we would have before us a fact situation in which defendant would have a relatively short period of time within which to avoid the injury. According to the opening statement plaintiff first saw defendants' truck when it "was probably about a car length or a little more back of the sidewalk area." The opening statement did not make reference to the width of the sidewalk or the distance between plaintiff's automobile and the crosswalk at the time defendant is alleged to have first discovered plaintiff's perilous situation. The diagram which plaintiff's counsel had drawn on the blackboard indicated the relative position of the two vehicles. However, the trial judge did not see the diagram and it was erased before the issue which is before us was raised by defendants' motion.

In answering defendants' argument on the motion plaintiff's counsel stated "that the sidewalk was eleven feet from the intersection and a car length could be anywhere from eighteen to twenty-four feet back at the time plaintiff hit him." We do not know where these measurements would put defendants' truck with reference to plaintiff's automobile at the time plaintiff was at a point of discovered peril from which he could not extricate himself. We must assume for present purposes that defendant had discovered plaintiff's perilous situation immediately. Still he would have had a relatively short period of time to avoid the collision. It follows from plaintiff's estimate of the speed of defendants' vehicle as fifteen to twenty miles per hour or a little more that Murdock would have had but a few seconds within which to stop or swerve away from plaintiff's automobile. Defendants rely

upon *Hamilton v. Finch,* 166 Or 156, 166, 109 P2d 852, 111 P2d 81 (1941) for the proposition that negligence cannot be predicated upon two seconds of time. There the court quoted from *Goodson v. Schwandt,* 318 Mo 666, 669, 300 SW 795 as follows:

> " 'To predicate negligence on two seconds of time is in and of itself a monumental refinement. We cannot adjudicate negligence on such pulse beats and hair-splitting, such airy nothings of surmise.' "

Assuming that the quoted statement had some value in deciding the question in *Hamilton v. Finch,* supra, it cannot be accepted as a postulate upon which to exclude a permissible inference of negligence in every case. Many accidents arise out of circumstances which leave the persons involved a matter of seconds to make crucial choices and in many of them the failure to take the proper choice of action may spell negligence. It is possible in some circumstances that a few seconds would afford a defendant a last clear chance to avoid injury to a negligent plaintiff. If we should assume that defendant in the case at bar was twenty-four feet from the crosswalk, it would be necessary to add an estimated width of the crosswalk and the estimated distance from the crosswalk to plaintiff's automobile to arrive at the total estimated distance within which defendant had an opportunity to size up the situation, realize plaintiff's peril, and stop or swerve away to avoid the collision. We do not know what these measurements are (nor did the trial judge). We know little more about plaintiff's relative position and whether he was able to avoid the collision.

The trial court rested its decision on the theory that plaintiff's negligence continued up to the moment of impact. This was predicated upon the assumption

that after plaintiff turned his vehicle to the left he turned back to his own side of the street into a position of danger which conduct constituted continuing negligence on his part because "he must have known he could not have avoided the collision under such circumstances of the record at the time." The difficulty in making this assumption is that plaintiff may have had evidence to show that there were other vehicles in the intersection or pedestrians in the crosswalk or other circumstances and, therefore, no other course of action was open to him. The assertion that his negligence "continued" has little meaning. Certainly he was in a position of danger as a result of his own negligence—this he admits. The question is whether plaintiff could have introduced evidence to show that he had no way of avoiding a collision with defendants' truck after plaintiff negligently drove into the intersection and that subsequently defendant discovered plaintiff's peril and could have swerved or stopped and thus avoided the collision and resulting injury.

■■■ When the court passes upon a motion for involuntary nonsuit made before presentation of the evidence at trial, plaintiff is entitled to every reasonable conjecture as to what the evidence might show as long as it is not inconsistent with the evidence described in the opening statement. We cannot say that plaintiff could not have presented evidence supporting his theory of last clear chance. Only in rare situations should a case be decided upon the basis of an opening statement.[4] We do not regard this as such a case.

The judgment is reversed and the cause is remanded for a new trial.

---

[4] Coughlin v. State Bank of Portland, 117 Or 83, 243 P 78 (1926); Lane v. Portland Ry., L. & P. Co., 58 Or 364, 114 P 940 (1911).

LUSK, J., concurring.

I have grave doubt whether the last clear chance doctrine can ever be applied to a case involving a collision between two automobiles in an intersection of streets under circumstances similar to those described in the opening statement of counsel for the plaintiff. Thus it is said in 61 CJS 123, Motor Vehicles § 493:

"As a general rule the last clear chance doctrine is inapplicable if the negligence of the injured person continued to the time of the accident and concurred with the negligence of the motorist as a proximate cause of the injury."

I agree, however, that this is a question to be determined not on the opening statement of counsel, but after the evidence on behalf of the plaintiff has been received. I, therefore, concur in the result.

McALLISTER, C. J., concurs in this opinion.