Argued and submitted September 25, 1996, affirmed March 19, petition for review denied May 27, 1997 (325 Or 368)

Larry J. DAVIS,
*Appellant,*

*v.*

UNITED STATES EMPLOYERS COUNCIL, INC.,
dba Sharp Management Services,
Barbara Sharp,
*Defendants,*

*and*

LANPHERE ENTERPRISES, INC.,
dba Beaverton Honda,
*Respondent.*

(9304-02342; CA A85584)

934 P2d 1142

James S. Coon argued the cause for appellant. With him on the briefs was Swanson, Thomas & Coon.

Stephen P. Rickles argued the cause for respondent. With him on the brief was Holmes & Rickles.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

Deits, P. J., dissenting.

### HASELTON, J.

Plaintiff appeals from an adverse judgment, which was entered after allowance of an involuntary dismissal, in an action for workplace personal injury. The trial court concluded that the exclusive remedy provision of the workers' compensation law, ORS 656.018, barred plaintiff's claim, because plaintiff's proof was legally insufficient to establish that that his injury resulted "from the deliberate intention of the employer * * * to produce such injury." ORS 656.156(2).

■ The trial court granted the defendant[1] employer's motion for involuntary dismissal based on its assessment of plaintiff's proof after plaintiff's opening statement. *See Sadler v. Sisters of Charity*, 247 Or 50, 426 P2d 747 (1967) (describing procedure). We review that ruling as we would the granting of a directed verdict for defendant and, thus, view the evidence described in plaintiff's opening statement and all reasonable collateral inferences in the light most favorable to plaintiff. *See Palmer v. Murdock et al*, 233 Or 334, 343, 378 P2d 271 (1963). So viewed, the record discloses the following material facts:

From 1982 until 1991, plaintiff worked as an automobile painter in defendant's Beaverton Honda body shop. Over that time, plaintiff was regularly exposed to excessive levels of toxic paint fumes and, as a result, suffered regular and increasingly severe symptoms of a respiratory nature, headaches, eye irritation, lightheadedness, and memory loss. Other workers in the body shop experienced similar problems. Plaintiff and his coworkers repeatedly complained to defendant's management about the paint fumes, the lack of adequate ventilation, and their symptoms.

Defendant knew that the conditions in the body shop were hazardous and that its employees, including plaintiff, were being injured because of those conditions. Defendant's choice as to the physical layout and surrounding areas, types of paint and painting methods used, and the inadequacy or

---

[1] "Defendant," as used in this opinion, refers exclusively to plaintiff's employer, defendant Lanphere Enterprises, Inc.

absence of protective equipment and other safeguards materially contributed to the neurological problems plaintiff experienced. Although defendant undertook some remedial measures, it refused to undertake others, including providing enclosed spray paint booths and air-supplied respirators. Defendant knew that its remedial methods were inadequate and, in at least some respects, did not satisfy regulatory requirements. Indeed, on at least two occasions, defendant's managers lied and actively concealed safety/ventilation violations from occupational safety inspectors.

Defendant's sole reason for refusing to undertake adequate safety measures was to save money.

Plaintiff's symptoms became increasingly severe but were transient and did not completely incapacitate him until June 4, 1991, when, as a result of an accident, he was suddenly exposed to extreme levels of toxic fumes. On June 11, 1991, plaintiff consulted his physician, who, in turn, referred him to an occupational medical specialist. On July 20, that specialist diagnosed plaintiff as having chronic toxic encephalopathy, with organic brain damage. Plaintiff's condition was caused by excessive exposure to toxic paint fumes.

On April 12, 1993, plaintiff brought this action, alleging that defendant acted with deliberate intention to produce injury to plaintiff in that it refused to provide adequate safety equipment and to undertake other remedial measures, notwithstanding its knowledge that plaintiff and others were suffering substantial ongoing harm as a result of excessive exposure to toxic fumes. Plaintiff alleged, *inter alia*, that the exposure for the entire period of his employment, from 1982 onward, constituted a "continuing tort."

Thereafter, defendant moved for summary judgment, arguing that plaintiff's claim was time barred under the general two-year statute of limitations for personal injury actions. ORS 12.110(1). The trial court allowed partial summary judgment, holding that plaintiff could not recover for defendant's conduct before April 12, 1991 (more than two years before the filing of the action) but that the statute of limitations did not bar claimant's claims to the extent they were based on the employer's conduct after April 12, 1991.

The parties proceeded to trial on that aspect of plaintiff's claims pertaining to conduct after April 12, 1991. Employing the procedure described in *Sadler*, plaintiff submitted a written opening statement, detailing his proof of defendant's alleged "deliberate intention" to produce the injury, which would avoid workers' compensation exclusivity. *See* ORS 656.156(2). Defendant moved for an involuntary nonsuit, asserting that plaintiff's proof was legally insufficient to establish the requisite "deliberate intention." The trial court agreed and entered judgment for defendant.

On appeal, plaintiff raises two assignments of error. First, the trial court erred in concluding that plaintiff's proof was legally insufficient to establish "deliberate intention * * * to produce such injury," within the meaning of ORS 656.156(2). Second, the trial court erred in applying the two-year statute of limitations, ORS 12.110(1), to bar plaintiff from recovering for employer's conduct before April 12, 1991. The first assignment of error is, potentially, completely dispositive. That is, if we agree with the trial court that plaintiff cannot demonstrate "deliberate intention," his claims against the defendant employer are barred by workers' compensation exclusivity, regardless of the statute of limitations.[2]

We conclude, as amplified below, that plaintiff's proof of "deliberate intention" was legally insufficient. *See Kilminster v. Day Management Corp.*, 323 Or 618, 919 P2d 474 (1996); *Lusk v. Monaco Motor Homes, Inc.*, 97 Or App 182, 775 P2d 891 (1989). Thus, ORS 656.018 bars plaintiff's claims against his employer.

ORS 656.018 provides, in part:

"(1)(a)    The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability arising out of injuries, diseases, symptom complexes or similar conditions arising out of and in the

---

[2] Plaintiff's proffered proof pertaining to defendant's "deliberate intention" encompassed the entire period of his employment, from 1982 to 1991. Thus, if that proof was insufficient to establish "deliberate intention" for any period of plaintiff's employment, the statute of limitations becomes immaterial.

course of employment that are sustained by subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such conditions or claims resulting therefrom, specifically including claims for contribution or indemnity asserted by third persons from whom damages are sought on account of such conditions, except as specifically provided otherwise in this chapter."

ORS 656.156(2) embodies an exception to that exclusivity provision:

> *"If injury or death results to a worker from the deliberate intention of the employer of the worker to produce such injury or death*, the worker, the widow, widower, child or dependent of the worker may take under this chapter, and also have cause for action against the employer, as if such statutes had not been passed, for damages over the amount payable under those statutes." (Emphasis supplied.)

Plaintiff argues that, because defendant knew that plaintiff and other employees were being harmed, and would continue to be harmed, by its refusal to implement adequate safety measures, that profit-driven refusal evinced "deliberate intention":

> "[I]t makes no difference that defendant's primary motive was to make more money. Where defendant harms plaintiff as a necessary means to the motivating end, the law holds defendant to intend the harm to plaintiff."

Defendant counters that, to prove "deliberate intention," plaintiff must show that defendant "wished" to injure plaintiff. Defendant further asserts that plaintiff's opening statement identified no proof of such a "wish" or "desire" to injure. We agree.

Assuming the truth of plaintiff's evidence, as outlined in his opening statement, plaintiff could prove that: (1) Defendant knew that plaintiff and other employees were suffering severe respiratory symptoms because of their exposure to paint fumes. (2) Defendant further knew that, unless it provided better safety equipment, plaintiff or some other similarly situated employee was *certain* to suffer severe

injury. (3) Notwithstanding that certainty of injury, defendant did not provide better protective equipment or undertake other related safety measures. (4) Defendant did not provide the necessary equipment and chose, instead, to expose its employees to the certainty of serious injury, *because it wanted to save money.*

■         The last point bears reiteration because it is the *sine qua non* of the analysis that follows: Plaintiff acknowledges that the defendant employer, at worst, acted from a desire to save money and not from an affirmative desire to injure plaintiff or his coworkers. At oral argument, plaintiff's counsel was explicit in that regard:

> "I do want to make clear this concession. I will tell you that we cannot prove, * * * we will not be able to prove that they hated Larry Davis and that their motive was to hurt him. We are not hoping for a decision that says, well, 'you knew that it would [hurt him] so it's possible to infer' * * *. We're not able to prove that so it would waste everybody's time to find that there wasn't a concession [that defendant had no desire to hurt plaintiff]."[3]

That acknowledgment—that plaintiff cannot prove that his employer withheld safety equipment because it wished to injure him—precludes plaintiff's tort claims. *See Kilminster*; *Lusk.*

In *Lusk*, we considered whether workers' compensation exclusivity barred a claim arising from circumstances similar to those presented here. There, the plaintiff was employed as a painter for the defendant mobile-home construction company. The plaintiff worked in a painting booth without adequate ventilation and was exposed to paint vapors that can cause respiratory problems. The plaintiff began to suffer headaches, nausea, irritability, and memory loss. He complained to his supervisor, who, in turn, asked defendant to furnish the painters with supplied-air respirators. The defendant refused to buy the respirators because it did not wish to spend the necessary $2,000 per unit. The

---

[3] Plaintiff echoes that acknowledgment in his brief: "[D]efendant Lanphere had ᴏ desire to injure plaintiff or his co-workers; his desire was to make more mᴏ ᴦ ᴇ̌ᴥ."

plaintiff became permanently disabled as a result of the paint-vapor exposure.

The plaintiff subsequently brought a personal injury action against his employer, alleging that the defendant had deliberately intended to injure him. The defendant moved for summary judgment, asserting that the plaintiff's action was barred by workers' compensation exclusivity. The plaintiff contested summary judgment, asserting, *inter alia*, that there was, at least, a factual issue as to whether the defendant acted with a "deliberate intention" to produce the plaintiff's injury. ORS 656.156(2). The trial court concluded that there was no evidence from which a jury could infer the requisite "deliberate intention" and granted summary judgment.

On appeal, the plaintiff argued that

> "a jury could find that defendant knew that the paint fumes were injuring him and that it made a conscious decision to continue to expose him to the hazard with that knowledge [and that] from those facts * * * a jury could infer that defendant deliberately intended to injure him." 97 Or App at 186.

In so arguing, the plaintiff referred to the presumption in OEC 311(1)(a) that a "person intends the ordinary consequences of a voluntary act." He also invoked *Restatement (Second) of Torts*, section 8A, which defines "intention" as "desir[ing] to cause [the] consequences of [one's] act, or * * * believ[ing] that the consequences are substantially certain to result from it."[4] Thus, the plaintiff in *Lusk* "assume[d] that the statutory phrase 'deliberate intention * * * to produce such injury' establishes the same standard as does the term 'intent' in the common law of intentional torts." 97 Or App at 186.

We rejected that argument, holding that the test of "deliberate intention" in ORS 656.156(2) was distinct from concepts of "intentionality" expressed in either OEC 311-(1)(a) or the *Restatement*:

---

[4] Plaintiff here similarly invokes *Restatement* section 8A as support for his argument that defendant's actions demonstrated "intent" to injure.

"If [plaintiff] were correct, we would have no difficulty in holding that he has shown enough to defeat defendant's motion for summary judgment. However, plaintiff wrongly interprets the statutory standard.

"* * * * *

"* * * The statutory exemption applies only if the injury results 'from the deliberate intention of the employer of the worker to produce such injury * * *.' That phrase requires, *in addition to the intent that will normally suffice to prove an intentional tort*, that the injury be 'deliberate,' in the sense that the employer has had an opportunity to weigh the consequences and to make a conscious choice among possible courses of action, *and also that the employer specifically intends 'to produce * * * injury' to someone, although not necessarily to the particular employe who was injured.* An employe does not satisfy those requirements by showing that the employer refused to provide safety equipment, even if injury is the necessary result of that failure. *It is not enough for the employer to act with conscious indifference* to whether its actions will produce injury; it must intend to produce injury." *Id*. at 186-88 (emphasis supplied; original emphasis deleted).

■    Thus, under *Lusk*, a plaintiff who relies on ORS 656.156(2) to avoid the workers' compensation exclusivity bar of ORS 656.018 must prove *both* that the employer acted deliberately *and* that the employer acted with a specific intent to produce injury to the plaintiff or someone similarly situated. In so holding, the *Lusk* majority explicitly disapproved the analysis expressed in a special concurrence. *See* 97 Or App at 190 (Riggs, J., specially concurring). The special concurrence asserted that requiring proof of both "deliberation" and "specific intent" to produce injury was erroneous and, indeed, "disingenuous":

"Plaintiff alleges that defendant was aware of the consequences of its actions, was aware of the existence of alternative courses of action and deliberately chose to inflict injury on plaintiff rather than adopt a different course. Neither statute nor policy requires that an employer be provided with an exemption from tort liability for having made such a choice." *Id*. (citations omitted).

The majority rejected that approach:

"The special concurrence focuses on the 'certainty' of injury, that is, **whether** the employe will be hurt, rather than on the intent behind the injury, that is, **why** the employe will be hurt. An injury can result 'certainly' from negligence or conscious indifference and thus not meet the statutory standard. Conversely, an employer can have the specific intent to produce an injury that was not 'certain' to result from its acts, as in *Weis v. Allen*[, 147 Or 670, 35 P2d 478 (1934)]. The special concurrence would read the word 'deliberate' out of the statute. *Moreover, it fails to address the other (and, in this case, more difficult) requirement of the statute: the specific intent 'to produce [the] injury.'* " 97 Or App at 188 n 4 (original emphasis in boldface; other emphasis supplied).

We then proceeded to assess the sufficiency of the plaintiff's proof with respect to the two conjunctive requirements. The "deliberate" quality of the employer's conduct was straightforward:

"A jury could find that defendant knew that plaintiff was suffering injury from the paint, knew that he would continue to do so as long as he worked without a supplied-air respirator and, after deliberation, consciously decided not to provide such a respirator. It could, therefore, find that defendant's acts were 'deliberate.' " *Id.* at 188.

Finally, we addressed "the more difficult question" of whether the defendant specifically intended to produce an injury:

"*The affidavits suggest that defendant failed to provide the respirator because of the cost. Such a reason, while perhaps not laudable, is not a specific intent to produce an injury.* However, the trial court on summary judgment, like a jury, need not accept defendant's proffered reason in isolation. Specific intent to injure may be inferred from the circumstances.

"Here, a jury could infer, from all of the circumstances, that defendant failed to provide the respirator **because** *it wished to injure plaintiff*: Defendant knew that the paint was highly toxic and that plaintiff's resulting injury was substantial and continuing; it did not follow the warnings of the paint manufacturer and the urging of its insurer to furnish a supplied-air respirator; plaintiff and his supervisor had complained about the problem repeatedly; and the cost

of proper, available equipment (which defendant knew would soon be required by the state) was not prohibitive. A specific intent to produce injury is not the only permissible inference to be drawn from defendant's apparent obstinacy, but it is one that a jury should be permitted to consider." *Id.* at 189 (original emphasis in boldface; other emphasis supplied).

Thus, because there was a triable issue of fact in *Lusk* as to whether the employer specifically intended to produce the injury, we reversed and remanded for trial.

■ *Lusk* yields three pertinent principles: *First*, to prove "deliberate intention" within the meaning of ORS 656.156(2), a plaintiff must prove that a defendant employer acted as it did *"because it wished to injure* plaintiff." 97 Or App at 189 (original emphasis in boldface; other emphasis supplied).

■ *Second*, where an employer fails to undertake safety measures solely because of cost, that failure, even when the employer knows injury is certain to occur, is not actionable under ORS 656.156(2). "Such a reason, while perhaps not laudable, is not a specific intent to produce an injury." *Id.* at 189.

■ *Third*, where a plaintiff proves that a defendant employer deliberately failed to undertake safety measures knowing that injury was certain to result, that failure may, but need not, support an inference that the employer specifically intended to produce an injury. That is, even if a plaintiff proves deliberation and certainty of injury, the jury can, nevertheless, return a defense verdict because the requisite specific intent is only one of several permissible inferences the jury can draw. *Id.*

Under principles of *stare decisis, Lusk* controls unless intervening changes in the law, including decisions of the Supreme Court, repudiate or substantially call into question our analysis and holding. *Kilminster* was decided after *Lusk*. However, nothing in *Kilminster* alters our fidelity to *Lusk*.

In *Kilminster*, the court, after addressing the identical authority we discussed in *Lusk*,[5] endorsed and reiterated

_____

[5] *See, e.g., Duk Hwan Chung v. Fred Meyer, Inc.*, 276 Or 809, 556 P2d 683 (19__); *Bakker v. Baza'r, Inc.*, 275 Or 245, 551 P2d 1269 (1976); *Caline v. Maede*,

*Lusk*'s operative principle: To invoke ORS 656.156(2), a plaintiff must prove that a defendant employer acted as it did "because it *wished* to injure or kill" the plaintiff. *Kilminster*, 323 Or at 633 (emphasis supplied).

The circumstances in *Kilminster* closely parallel those in *Lusk*. The plaintiffs alleged that: (1) The decedent employee had frequently complained to the defendant employer about unsafe conditions and, particularly, the lack of safety equipment, in climbing a radio tower; (2) the defendant deliberately refused to undertake necessary safety measures, including providing legally required safety equipment; (3) the defendant knew that if it did not undertake the requisite safety measures, a worker would fall and suffer serious injury or death; and (4) the defendant ordered the decedent to climb the tower or lose his job. 323 Or at 621-22. Thus, in *Kilminster*, as in *Lusk*, the plaintiffs alleged that the employer deliberately refused to undertake safety measures notwithstanding the certainty of serious injury or death.

Although *Kilminster* does not cite *Lusk*, substantial portions of *Kilminster* reproduce *Lusk*'s analysis verbatim, or virtually so. *Compare, e.g., Kilminster*, 323 Or at 629-32 *with Lusk*, 97 Or App at 186-88. In particular, in *Kilminster*, as in *Lusk*, the court held that, to prove "deliberate intent," a plaintiff must show that the employer "wished to injure or kill" the employee and that, even if a plaintiff proves that the defendant employer acted deliberately, knowing that injury was certain to result, the jury need not infer "deliberate intention":

> "Reading all the allegations together, in the light most favorable to plaintiff, a finder of fact reasonably could infer that DMC determined to injure an employee, that is, specifically intended 'to produce [decedent's] injury or death.' *The underlying facts pleaded by plaintiff do not describe when or how DMC determined to injure decedent. However, a specific intent to produce an injury **may** be inferred from the cir*cumstances. Taking all the allegations of the second claim

---

239 Or 239, 396 P2d 694 (1964); *Weis v. Allen*, 147 Or 670, 35 P2d 478 (1934); *Heikkila v. Ewen Transfer Co.*, 135 Or 631, 297 P 373 (1931); *Jenkins v. Carman Mfg. Co.*, 79 Or 448, 155 P 703 (1916).

together, plaintiff alleges more than gross negligence, carelessness, recklessness, or conscious indifference to a substantial risk of injury. Plaintiff alleges that serious injury to or death of a worker was certain to occur, that DMC failed to take requisite safety precautions or buy requisite safety equipment, and that DMC instructed decedent to climb the tower while knowing that a worker who climbed the tower would fall and be hurt. *A reasonable finder of fact* **could** infer that DMC acted as it did because it wished to injure or kill decedent. A specific intent to injure or kill decedent certainly is not the only state of mind that could be inferred, but it is a permissible inference. We need not consider whether plaintiff can prove that defendants had the alleged specific intent to injure or kill decedent; in the procedural posture of this case, we consider only the sufficiency of the complaint." 323 Or at 632-33 (emphasis and boldface supplied; emphasis in original deleted; citation omitted).

*Kilminster*'s use of the same "wish to injure" formulation announced in *Lusk* was not casual or accidental. The use of identical language, assessing the application of ORS 656.156(2) to closely analogous circumstances, can only be regarded as deliberate.

■     The necessary consequence of the *Kilminster/Lusk* formulation is that, where a plaintiff acknowledges that he or she cannot prove that a defendant employer "wished to injure" the employee or someone similarly situated, ORS 656.156(2) is not available and the plaintiff's claim is barred as a matter of law by ORS 656.018. That is so, regardless of whether the employer acted in a calculated fashion to maximize its profits in utter disregard of the certainty of injury to its employees.

The dissent asserts that *Kilminster* does not mean what it says—and contends, particularly, that *Kilminster* is more restrictive than *Lusk*. Significantly, the dissent does not argue that *Lusk* was wrongly decided. In particular, it does not contend that *Lusk* misconstrued or misapplied Supreme Court authority—the same authority that underlies *Kilminster*. Rather, the dissent asserts that *Kilminster* represented not only a repudiation of *Lusk*, but also, implicitly, a retrenchment from the 80-plus years of Supreme Court

precedent on which *Lusk* relied.[6] In the dissent's view, the Supreme Court achieved that repudiation *sub silentio* through the curious—indeed, ironic—device of employing the same formulation *Lusk* announced.[7]

The dissent's criticism flows from a false first premise, *i.e.*, that the facts alleged in *Kilminster*, if proved, would conclusively establish the defendant employer's "deliberate intention" to injure the decedent. *Kilminster* does not so hold. Rather, the court held that, if proved, the facts alleged by plaintiffs were sufficient to *permit* a jury to infer the necessary, actionable state of mind:

> "A reasonable finder of fact *could* infer that DMC acted as it did because it wished to injure or kill decedent. A specific intent to injure or kill decedent certainly is not the only state of mind that could be inferred, but it is a permissible inference. We need not consider whether plaintiff can prove that defendants had the alleged specific intent to injure or kill decedent; in the procedural posture of this case, we consider only the sufficiency of the complaint." 323 Or at 633 (emphasis supplied; emphasis in original deleted).

Thus, the court did not hold that the plaintiffs' allegations, if proved, *compelled* a finding of liability. That is, the *Kilminster* court understood and expressly acknowledged that, even if the plaintiffs were able to prove that the employer deliberately withheld safety measures despite the certainty of injury, those facts would not automatically establish "deliberate intention," because the requisite "wish to injure" was just one of a range of mental states the jury *could* infer from those facts. Among the range of other reasonably inferable, but nonactionable, mental states, is that the employer acted as it did not because it wished to injure the defendant but merely because it wanted to save money.

In *Kilminster*, as in *Lusk*—and in this case—the "wish to injure" is the *sine qua non* of "deliberate intention." We agree with the dissent that this case and *Kilminster* (and *Lusk*) are *legally* indistinguishable. *See* 147 Or App at 180.

---

[6] *See* note 5 above.

[7] We note, parenthetically, that Judge Graber wrote both *Lusk* and *Kilminster*.

The conclusive point, however, is that this case is *factually* distinguishable from the other two. Only in this case has plaintiff stipulated that he cannot prove what he must prove, that his employer withheld safety measures because it wished to injure him. But for that admission, this case would be materially indistinguishable from *Lusk* and *Kilminster* and remand would be required.

■     Finally, the dissent erects, and pummels, a straw man:[8]

> "If the majority correctly reads that statement in *Lusk* to mean that an employer's conduct that is motivated by cost savings or other financial motives *cannot* also and simultaneously entail a specific intent to injure, then in my view, *Lusk* is wrong and is inconsistent with *Kilminster*. * * * I note that the majority's proposition would make proof of intent difficult or impossible in cases of murder for hire." 147 Or App at 182-83.

Nothing in this opinion or, indeed, in *Lusk* or *Kilminster* sanctions such a result. Indeed, they state the opposite. Clearly, a profit motive and a wish to injure *can* coexist—the two are not necessarily mutually exclusive—and, if they do, ORS 656.156 applies.

We fully appreciate that, in some cases, the "wish to injure" formulation may produce seemingly cold-blooded results. Nevertheless, that formulation is the product of the statute's language and of over 90 years of case law, including, most recently, *Kilminster* and *Lusk*. The choice of whether such calculated conduct should be shielded from the full force of tort law is ultimately a matter of policy.[9] Statutory amendment is committed to the legislature, not to this court.

---

[8] Or, in the dissent's preferred metaphor, a "dead horse."

[9] *See*, *e.g.*, Guido Calabresi, *The Decision for Accidents: An Approach to Non-fault Allocation of Costs*, 78 Harv L Rev 713, 716 (1965):

> "Our society is not committed to preserving life at any cost. In its broadest sense, this rather unpleasant notion should be obvious. * * * But what is more interesting to the study of accident law, though perhaps equally obvious, is that lives are used up when the *quid pro quo* is not some great moral principle but 'convenience.' Ventures are undertaken that, statistically at least, are certain to cost lives. Thus, we build a tunnel under Mont Blanc because it is essential to the Common Market and cuts down the traveling time from Rome to Paris, though we know that about a man per kilometer of tunnel will die. We take planes and cars rather than safer, slower means of travel. And perhaps

Given plaintiff's laudable candor, the application of the "wish to injure" formulation in this case is clear. Plaintiff acknowledges that he cannot prove that defendant refused to undertake safety measures because it wished to injure him. Consequently, the trial court correctly determined that plaintiff's action was barred by ORS 656.018.

Affirmed.

**DEITS, P. J.,** dissenting.

In this case, as in *Kilminster v. Day Management Corp.*, 323 Or 618, 919 P2d 474 (1996), the plaintiffs' proffered allegations or evidence, if proven, would permit findings that the defendant employers created unduly dangerous work conditions or instrumentalities, failed to take available or required safety or curative measures, and compelled the injured employees and similarly situated persons to work under the conditions despite the employers' knowledge that injury or death was certain to result.

The Supreme Court held in *Kilminster* that those asserted facts gave rise to a permissible inference that the employer acted with a deliberate intention to injure and, therefore, gave rise to an actionable tort claim under ORS 656.156(2). After an exhaustive analysis of its earlier decisions construing and applying that statute, the court stated:

"The meaning of the provision at issue in this case is clear from this court's prior interpretations. In order for a worker to show that an injury that occurred during the course and scope of the worker's employment 'result[ed] * * * from the deliberate intention of the employer * * * to produce' that injury, the worker must show that the employer determined to injure an employee, that is, had a specific intent to injure an employee; that the employer

most telling, we use relatively safe equipment rather than the safest imaginable because—and it is not a bad reason—the safest costs too much."

In all events, the availability of tort remedies is not the exclusive mechanism for regulating and deterring employer conduct that deliberately sacrifices employee health in order to maximize profits. Such conduct may also be subject to criminal sanctions, *see, e.g.*, ORS 163.118 (manslaughter in the first degree); ORS 163.175 (assault in the second degree); ORS 163.195 (recklessly endangering another person), and administrative/occupational safety penalties. *See* ORS 654.001 *et seq* (the Oregon Safe Employment Act, which provides civil penalties for workplace safety violations).

acted on that intent; and that the worker was, in fact, injured as a result of the employer's actions." *Id*. at 631.

The court then proceeded to apply that legal standard to the plaintiff's allegations in *Kilminster*:

> "In this case, plaintiff has alleged facts sufficient to meet the foregoing standard for deliberate intention to injure or kill. Plaintiff alleges that [the employer] DMC *knew* that decedent or someone who did the same work as decedent *would* be injured from a fall from the tower; that DMC decided to forego taking safety procedures, *knowing* that, by so doing, serious injury or death *would* result; and that DMC told decedent to climb the tower or lose his job.
>
> "* * * * *
>
> "Reading all the allegations together, in the light most favorable to plaintiff, a finder of fact reasonably could infer that DMC determined to injure an employee, that is, specifically intended 'to produce [decedent's] injury or death.' The underlying facts pleaded by plaintiff do not describe when or how DMC determined to injure decedent. However, a specific intent to produce an injury may be inferred from the circumstances. * * * Plaintiff alleges that serious injury to or death of a worker was *certain to occur*, that DMC failed to take requisite safety precautions or buy requisite safety equipment, and that DMC instructed decedent to climb the tower while *knowing* that a worker who climbed the tower *would* fall and be hurt. A reasonable finder of fact could infer that DMC acted as it did because it wished to injure or kill decedent. A specific intent to injure or kill decedent certainly is not the only state of mind that could be inferred, but it is a permissible inference." *Id*. at 632-33. (Emphasis in original; citation omitted.)

In my view, this case does not differ from *Kilminster* in any dispositionally significant way. The majority agrees "that this case and *Kilminster* * * * are *legally* indistinguishable," but asserts that the cases are "*factually* distinguishable" because, in this case, "plaintiff [has] stipulated that he cannot prove" that defendant acted as it did "because it wished to injure him." 147 Or App at 177-78 (emphasis in original). The majority rejects plaintiff's argument that that "stipulation" is not consequential because, plaintiff asserts, the test of liability under ORS 656.156(2) that *Kilminster* and

earlier Supreme Court opinions establish is whether the employer "specifically intended" the employee's injury or death, not whether it had the affirmative motive to produce injury that the majority understands the word "wished" to connote. I agree with plaintiff's argument, and I do not agree that the majority succeeds in drawing a tenable distinction between this case and *Kilminster*.

Contrary to its characterization, the majority's distinction between the two cases is not a factual one but, rather, rests on its understanding that an employer's "wish" to injure or kill is the "*sina qua non*" of the legal standard that *Kilminster* establishes or endorses as the test for liability under ORS 656.156(2). However, as shown by the passages that I have quoted from *Kilminster*, the word "wished" appears only once in the relevant portion of the Supreme Court's opinion and appears there seemingly as a random word choice; by contrast, the phrase "specific intent," along with the phrase "determined to injure" that the court expressly treated as synonymous with "specific intent," appear repeatedly in *Kilminster* and are expressly identified by the court as defining the showing that a plaintiff must make to establish a deliberate intention to injure within the meaning of the statute. Similarly, phrases such as "specific intent" and "determined to injure" also appear repeatedly— and the word "wished" does not appear—in the Supreme Court's earlier decisions construing the statute, which it discusses and quotes at length in *Kilminster*.

The words "wish" and "intend" have many possible meanings and, under some of the definitional variations, the two words are effectively synonymous. It is apparent that the majority does not read the words in that synonymous sense, or else it could not regard the absence of a potentially provable "wish" in this case and the potential presence of one in *Kilminster* to be the sole basis for opposite results in the two cases. It is equally apparent, however, that the court in *Kilminster did* use the two words synonymously. As noted, the court's repeated references to "specific intent to injure" and its repeated quotations of the "specific intent" test from its earlier cases would, without more, make it highly improbable that the court's single use of the word "wished" was meant to establish a different legal test. That conclusion is

further supported by the fact that the quotations of the specific intent standard from the earlier cases are preceded in *Kilminster* by the court's reiteration of the principle that a "prior interpretation of a statute by [the Supreme] [C]ourt becomes part of the statute itself." *Id.* at 629. That is not a point that the court likely would have emphasized had its opinion been meant to change the basic test of actionability under ORS 656.156(2) that the earlier cases established.

The majority suggests in a different connection that this dissent "pummels a straw man." I note parenthetically that it is not always easy to tell the difference between a straw man and a dead horse. At the expense of beating one or the other, however, I think that there is a problem with the majority's analysis over and above the specifics of how it reads the language in *Kilminster*: The majority would ascribe a fundamental change in the law to the single appearance of a new word in a Supreme Court opinion that repeatedly reiterates the critical phrasing which was developed in the court's earlier cases and with which the new word can be read completely synonymously. The law is simply not as ephemeral as the majority would have it be.

Although my principal disagreement with the majority concerns our different understandings of the test of liability in *Kilminster*, a number of premises that underlie the majority's view require some discussion. First, the majority maintains that the requisite deliberate intention to injure *cannot* be present in situations where the employer's actions will necessarily result in a worker's injury, but where the employer acts "from a desire to save money and not from an affirmative desire to injure [the] plaintiff or his coworkers." 147 Or App at 170. The majority relies for that proposition on our statement in *Lusk v. Monaco Motor Homes, Inc.*, 97 Or App 182, 189, 775 P2d 891 (1989), that "[s]uch a reason, while perhaps not laudable, is not a specific intent to produce an injury."[1]

---

[1] For reasons that will appear as the discussion progresses, I find it unnecessary to decide whether the majority is correct in this or anything else that it ascribes to *Lusk*. I note only that this and the other statements in *Lusk* on which the majority relies may not accord with the majority's understanding of them when the context in which they appear is considered.

If the majority correctly reads that statement in *Lusk* to mean that an employer's conduct that is motivated by cost savings or other financial motives *cannot* also and simultaneously entail a specific intent to injure, then in my view, *Lusk* is wrong and is inconsistent with *Kilminster*. A specific intent to injure can be inferred, even where the employer has no "affirmative desire" to injure but is instead motivated by a desire to produce profits or to achieve some other objective, if an intervening injury is a certain byproduct of the other objective's achievement. While I intend no analogy between the actors or the acts, I note that the majority's proposition would make proof of intent difficult or impossible in cases of murder for hire. It is a truism that an actor can deliberately intend more than one consequence through a single course of conduct. To say that one result is the primary objective does not mean that the other is unintended, at least as a matter of law. The majority arrives at its contrary understanding by confusing motive and intent. However, there is no such confusion in ORS 656.156(2). Nothing in the statute supports the view that the existence or inferability of a deliberate intention to injure depends on the reasons—financial or other— *why* the intention was formed.

As I have indicated, the majority bases its thesis that injurious intent cannot be subsumed within economically-motivated conduct, at least in part, on the sentence it quotes from *Lusk*. However, that is far from the only inventive use that the majority makes of *Lusk*; indeed, the majority essentially treats our 1989 decision in that case, more than the Supreme Court's 1996 *Kilminster* decision or any of its others, as the linchpin of ORS 656.156 jurisprudence. The uses that the majority makes of *Lusk* are of two kinds: first, it says that *Lusk* is controlling on us in itself unless it has been "repudiate[d] or substantially call[ed] into question" by *Kilminster* or other "intervening changes in the law," 147 Or App at 174. Second, the majority appears to regard *Kilminster* as little more than a clone of *Lusk*, because of general similarities in their facts and specific similarities in their language which, according to the majority, "can only be regarded as deliberate." 147 Or App at 176.

If *Lusk* says what the majority understands it to say, I do not agree that it remains controlling after *Kilminster*.

The central premise of the majority's reasoning and its holding is that *Lusk* and, in turn, *Kilminster* adopted an "affirmative wish" standard of liability under ORS 656.156(2). As I have discussed, *Kilminster* does no such thing but, rather, reiterates and adheres to the specific intent standard established in the Supreme Court's earlier cases. If the majority is right in regarding *Lusk* as holding otherwise, then, without more, *Kilminster* and *Lusk* are not consistent.

The same example also illustrates why the majority's reliance on certain common language and usages in the two opinions does not succeed. The fact that the word "wished" can be found in both opinions adds nothing to its clear lack of substantive weight in *Kilminster*—whatever importance we might or might not have attributed to it in *Lusk*. More generally, the majority's focus on language here is not an effective analytical tool, because isolated and random words are an empty vessel when they are emphasized at the expense of context and substance. Most of the linguistic usages or similarities that the majority finds in the two cases are anecdotal: It is by no means surprising that two opinions, which interpret the same statute and apply the same Supreme Court precedent, would use *some* similar language. However, the majority attempts to elevate that coincidence into substance.

The majority recognizes that "*Kilminster* does not cite *Lusk*," but regards that fact as fully compatible with its theme that the Supreme Court's later opinion was meant to be little more than a republication of our decision in *Lusk*. With due respect, it defies belief that a judicial opinion can be understood to deliberately reiterate and, in effect, adopt the substance of another that it does not even cite.[2] The inherent improbability of that understanding becomes more graphic when it is remembered that *Kilminster does* cite and discuss each of the Supreme Court's previous decisions interpreting ORS 656.156(2), and *does* repeat their language with attribution.

---

[2] The majority notes that *Lusk* and *Kilminster* were written by the same judge during her respective tours of duty on the two courts. That fact makes it all the more astounding that *Kilminster* does not cite *Lusk* if, as the majority hypothesizes, the former was intended to duplicate the judge's earlier opinion.

At least as noteworthy as the fact that the linguistic similarities between the two opinions are random and lack any apparent substantive nexus is the fact that there are linguistic differences between the two that *do* reflect differences in substance. The majority points out that our prevailing opinion in *Lusk* forcefully disputed the significance of "certainty of injury" as a factor in the analysis under ORS 656.156(2), and expressly took issue with the specially concurring opinion's focus on that factor. However, as illustrated in the passages that I have quoted from *Kilminster*, the Supreme Court clearly reiterated the point from *its* earlier cases that "certainty of injury" is very much a part of the appropriate analysis and can be pivotal to the chain of inferences from which liability under ORS 656.156(2) can be found.

In sum, the majority's view of what *Kilminster* means is not strengthened by the fact that some of the isolated language that the majority emphasizes in that opinion has analogs in *Lusk*. For purposes of my analysis in this *dissenting* opinion, it is unnecessary for me to express a view about whether the majority is or is not correct in the way it reads *Lusk*. It suffices to say that, if the majority *is* right in that regard, *but see* note 1, *Lusk* as well as the majority's decision here are in conflict with the Supreme Court's decision in *Kilminster*, and the latter controls.

The majority makes one further point, which I will quote at length, rather than attempt to paraphrase:

"The dissent's criticism flows from a false first premise, *i.e.*, that the facts alleged in *Kilminster*, if proved, would conclusively establish the defendant employer's 'deliberate intention' to injure the decedent. *Kilminster* does not so hold. Rather, the court held that, if proved, the facts alleged by plaintiffs were sufficient to *permit* a jury to infer the necessary, actionable state of mind:

"'A reasonable finder of fact *could* infer that DMC acted as it did because it wished to injure or kill decedent. A specific intent to injure or kill decedent certainly is not the only state of mind that could be inferred, but it is a permissible inference. We need not consider whether plaintiff can prove that defendants had the alleged specific intent to injure or kill decedent; in the

procedural posture of this case, we consider only the sufficiency of the complaint.' 323 Or at 633 (emphasis supplied; emphasis in original deleted).

"Thus, the court did not hold the plaintiffs' allegations, if proved, *compelled* a finding of liability. That is, the *Kilminster* court understood and expressly acknowledged that, even if the plaintiffs were able to prove that the employer deliberately withheld safety measures despite the certainty of injury, those facts would not automatically establish 'deliberate intention,' because the requisite 'wish to injure' was just one of a range of mental states the jury *could* infer from those facts. Among the range of other reasonably inferable, but nonactionable, mental states, is that the employer acted as it did not because it wished to injure the defendant but merely because it wanted to save money." 147 Or App at 177. (Emphasis in original.)

The "first premise" that the majority attributes to this opinion is simply not here. As the majority indicates, and I agree, it is basic and blackletter law that questions of the mental state that accompany a party's actions are almost invariably for the factfinder to decide, and the factfinder is not *required* to infer a particular mental state even when the predicate facts are present to *permit* the inference to be drawn. However, the relevant question here is not what a factfinder must find but what it may find. In this case, as in *Kilminster*, the issue is whether there is a permissible inference of deliberate intention to injure that a trier of fact *may* draw. The answer is yes, and that is why the trial court erred and why the majority errs in affirming the directed verdict.

For all of the above reasons, I respectfully dissent.